HENDERSON *v.* NOLTING FIRST MORTGAGE CORPORATION *et al.; et vice versa.*

Nos. 11876, 11884.   OCTOBER 7, 1937.

*Evins, Quillian & Evins,* for plaintiff.

*William P. Kennedy, Pearce Matthews, Harold Hirsch, Marion Smith, Hamilton Lokey,* and *John M. Slaton,* for defendants.

BELL, Justice.   According to the petition in this case, J. R. Henderson was maliciously shot and injured by the janitor of an apartment-house, while present in the house as the guest of a tenant.   He filed the present action for damages, naming in his petition as amended the following six persons as defendants: Nolting First Mortgage Corporation, D. L. Stokes & Company Inc., D. L. Stokes, Fulton National Bank, P. H. Randall, Mrs. Bessie Brown Randall.   As to the three defendants first named, the petition also contained prayers and allegations seeking equitable relief.   The apartment-house was the property of the estate of W. L. Randall, deceased, subject to a security deed in favor of Nolting First Mortgage Corporation, which company, as the petition alleges, was, as agent, in control of the house at the time of the injury, managing the same through its agents D. L. Stokes & Company Inc., and D. L. Stokes.   It is in part by reason of these alleged relationships that the first three of the defendants are named as such in the plaintiff's petition.   The other three, Fulton National Bank, P. H. Randall, and Mrs. Bessie Brown

Randall, were executors of the estate of W. L. Randall, deceased, and were originally sued both as individuals and as executors, but the plaintiff by amendment struck them as executors. The court overruled two general demurrers filed by the three defendants first mentioned, one of them having demurred separately and the other two jointly; and to this judgment these *defendants* excepted. The court sustained a general demurrer filed together by the other three defendants, and to this judgment the *plaintiff* excepted. All parties in the court below were made parties to each bill of exceptions. (As to appellate jurisdiction, contrast *Burgess* v. *Ohio National Life Ins. Co.*, 177 *Ga.* 48, 169 S. E. 364.) The petition was in two counts. The first count alleged no actual negligence or wrong on the part of any defendant, but claimed merely that each of the defendants was liable for the acts of the janitor, in virtue of the relation of master and servant, the plaintiff contending that the janitor was the servant of each and all of the defendants, and that his act in shooting the plaintiff was committed within the scope of his employment as such. The second count was identical with the first, except that additional allegations were made. Therefore a statement of the second count will be sufficient to cover both counts. The second count as construed by the plaintiff is based upon the theory that the janitor, within the knowledge of the defendants, was a man of vicious and dangerous character, having a propensity to assault and injure others without cause, and that the defendants were negligent both in employing and in retaining him, after knowledge of this trait. Whether or not the allegations of the second count actually develop this theory as to all or any of the defendants, and whether, if so, a cause of action is stated as to such defendants, are among the questions for decision. In order to elucidate these questions, the allegations of the second count must be stated in further detail, although for the reason indicated no additional statement as to the first count is necessary. Accordingly, unless the contrary appears, the terms hereinafter used to denote the allegations, including the word "petition" and similar expressions, will refer to the second count only.

The petition as amended alleged the following: Prior to April, 1934, W. L. Randall purchased, subject to an outstanding security deed, described premises in Atlanta, Georgia, on which an apart-

ment-house known as 105 Rumson Road was situated. The security deed was held by Nolting First Mortgage Corporation, as grantee, to secure a large sum of money the payment of which Randall assumed. Having become in default as to principal, interest, and taxes, "the said Randall did execute a certain assignment of all rents accruing from said premises to the said Nolting Company, and did appoint as his agent for the immediate supervision and management of said properties the said Nolting Company, acting by and through its duly authorized" local agents Johnston & Johnston, a partnership engaged in the real-estate business "and in the management of said premises in particular for the said Nolting Company and for the said W. L. Randall. Pursuant to said arrangement all lease contracts entered into with tenants occupying apartments on said premises were entered into and executed in the name of W. L. Randall as owner until the time of his demise, and thereafter, including the time at which plaintiff received his described injuries, in the name of W. L. Randall Estate as owner and lessor." "In the course of the execution of the terms of said rent assignment, defendant Nolting Company, for its own benefit, as well as for the benefit of said W. L. Randall, his successors, administrators, executors, and assigns, acting as his duly authorized agent, all as shown in said rent assignment, did, acting by and through its local agents as aforesaid; exercise supervision and management of said described premises, including the janitor thereof, one Pete Brown, colored, the exercise of whose duties was confined to said premises under the control, direction, and management of the defendants herein, acting as aforesaid, paid the wages of said janitor and other workmen in and about the premises, let local contracts for the making of repairs on said premises and renovation and improvements in the respective apartments therein as desired by the tenants, and agreed upon by said local agents, collected all rents accruing from said premises, applying the same to the payment of interest and reduction of principal, etc., of the said indebtedness hereinbefore described, paid all the upkeep and maintenance of said premises, together with insurance and taxes assessed thereon by the State of Georgia and County of Fulton, and agreed to remit to the said W. L. Randall any sums in excess of the items herein enumerated. During the month of March, 1935, the said W. L. Randall de-

parted this life and said Fulton National Bank, P. H. Randall and Mrs. Bessie Brown Randall, defendants herein, were duly designated as executors of the last will and testament of said W. L. Randall, and thereafter duly qualified as such and entered upon the duties of said office, ratifying and continuing in full force and effect the terms and conditions of said rent assignment hereinbefore described as having been executed by said W. L. Randall, deceased, in favor of said defendant, Nolting Company, and said Nolting Company continued thereafter to act as theretofore in the supervision and management of said described premises as the duly authorized agent of said named executors, successors to the said W. L. Randall. . . On August 22, 1935, the Nolting Company took the management of this apartment-house from Johnston & Johnston and placed it with "its local agent, D. L. Stokes and/or D. L. Stokes & Co. Inc.," and "said defendants, D. L. Stokes and D. L. Stokes & Company Inc., did assume direction and management of said premises as herein described, for and in behalf of said Nolting Company as its duly authorized local agent and as agents for the said named executors as heretofore· set out and herein named." The "said defendant Nolting Company did, during all times mentioned herein, and does at the time of the filing of this suit, pay the expenses and upkeep of the office of D. L. Stokes & Co. Inc., as well as did pay and does pay a regular salary, together with commissions, to the said D. L. Stokes, either or both of said named parties being the duly authorized agents of said Nolting Company, with authority as aforesaid."

On or about October 12, 1935, the plaintiff, J. R. Henderson, went into the said apartment-house as the guest of one Edgar Thrower, who as a tenant occupied an apartment therein located on the second floor, where the plaintiff and other guests had dinner with Mr. and Mrs. Trower. "There was at said time and place employed on said premises by said defendants, acting as aforesaid, that is, the said D. L. Stokes and/or Stokes Company, duly authorized agent and/or agents of said Nolting Company, as well as the other named defendants herein, a negro janitor by the name of Pete Brown, who had been employed in the capacity of janitor at said premises for more than one (1) year prior thereto, said Brown being, as plaintiff afterwards discovered, a man

of violent temperament, ungovernable temper, a dissipated, irresponsible, and vicious character, addicted to habitual drunkenness. . . Shortly after the evening meal had been completed, and at approximately nine thirty o'clock p. m., the said janitor, Pete Brown, was engaged in washing and cleaning the railing and porch of the apartment directly under that occupied by said Thrower as tenant, and in which were at said time your plaintiff, together with the other guests therein; that plaintiff, together with his host, the said Thrower, walked out upon the small front porch, or balcony, at the front of said apartment and at the front of said building as hereinbefore described, which porch or balcony was enclosed by an iron balustrade or railing, approximately three (3) feet high; that said Thrower, seeing the said Brown engaged as aforesaid, asked the said Brown what he was doing; whereupon the said Brown mumbled, mouthed, and cursed at the said Thrower; such action on the part of said janitor was most unexpected and shocking to plaintiff as well as the said Thrower, who at that point merely retorted to said janitor that he must behave himself and keep quiet, that there were ladies in and around the apartment, and that the said Brown must behave himself or the said Thrower would see if it would not be possible to have said janitor removed from his employment. . . At this point the said Brown walked into the front yard almost directly under the porch or balcony on which stood plaintiff and the said Thrower, and in a much louder voice cursed and vilified the said Thrower," who being thus provoked picked up a small flower-pot and hurled the same at the said Brown, immediately after which the plaintiff and Thrower "came inside the apartment for the purpose of summoning" police officers "to arrest said janitor." Before an officer could be called, Brown, the janitor, fired a shotgun through a window and into the apartment, a portion of the discharge from which struck the plaintiff and completely destroyed the sight of his right eye as well as permanently wounding him about his head and face. "There was no quarrel between plaintiff and said janitor, and no enmity existed between them, and the said assault with firearms, as herein described, and as made upon plaintiff by the said janitor, Brown, was committed by the janitor, acting as aforesaid, without cause or provocation." "Said janitor, Brown, was at the time of the beginning of his interchange of words with

the said Thrower, as hereinbefore described, engaged in cleaning and washing a portion of the said described premises, which task was a part of the duties assigned to him by defendants and each of them, acting as aforesaid, in keeping and maintaining the said premises in a tenantable condition for and in behalf of said defendants and each of them, and being in the drunken condition as hereinbefore described, during the said interchange of words with the said Thrower, and as a result thereof became angry with the said Thrower to such an extent and degree that he immediately thereafter fired the said shot through the said window and into the said apartment, injuring and damaging plaintiff.

"Under the law in this State every master is liable for the torts committed by his servants, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary. . . Under the law in this State the master is bound to exercise ordinary care in the selection of servants and not to retain them after knowledge of incompetency or unsuitableness for said servant's employment. . . Even though the said servant and employee, Brown, may have, under the facts hereinbefore set out, departed from the prosecution of the master's business, that is, the business of the defendants and each of them, herein named, and may have committed the within described assault with the said shotgun against plaintiff outside the scope of said servant's employment, that nevertheless the said defendants and each of them are liable in damages to plaintiff as a direct and proximate result of said assault by the said servant, Brown, acting as aforesaid, since, as plaintiff avers, said defendants and each of them were negligent in the premises in that they and each of them failed to exercise ordinary care in the selection and retention in their employ of the said servant and employee, Brown, who, as plaintiff has heretofore alleged, was a man of dissipated, irresponsible, and vicious character, addicted to habitual drunkenness, possessing an ungovernable temper and generally unsuited to the employment assigned to him by said defendants and each of them. . . Plaintiff further alleges that said defendants and each of them, acting as aforesaid at all times herein mentioned, had and did exercise the right to specify work and the manner of performance thereof on the part of said servant and employee, Pete Brown, as well as paying his wages as afore-

said. . . Said servant and employee, Brown, was an unsuitable person for the employment he was engaged in, and this fact was known, or in the exercise of ordinary care could have been known, to defendants and each of them. . . Said servant and employee, Pete Brown, did at all times herein mentioned, and does now, have a well-known and notorious record for violence and ill-treatment to other people, has wrongfully assaulted others prior to the assault herein complained of, all while in defendants' employ as janitor on said premises as aforesaid, and does possess a lengthy jail record, having been arrested and convicted on several occasions for assaults upon persons, as well as other and similar crimes of violence, all of which was known to defendants D. L. Stokes, Stokes Company, and Nolting Company, as well as the other defendants herein named, who on various occasions lent their aid and assistance to the said servant, Brown, in effecting his release from custody and in paying damages for the said servant, Brown, to the said injured persons. . . Said defendants and each of them knew, or in the exercise of ordinary care should have known, of this record of violence and general unsuitableness of said Brown for the said employment assigned to him by said defendants and each of them, as janitor on said premises; but notwithstanding, said defendants and each of them did carelessly, negligently, and wrongfully employ and retain in their employ the said servant Brown, well knowing that the said Brown was an unfit and improper person to have in their employ as janitor on said premises, and as a direct and proximate result of said described negligence on the part of said defendants and each of them plaintiff has been injured and damaged as herein set out.

"Plaintiff did not at said time and place know of the violent temper, habitual drunkenness, and dissolute character and general unsuitableness of said janitor, Brown, for his said employment, nor did he have equal means with defendants and each of them of knowing, nor by the exercise of ordinary care could he have known of this fact. . . Plaintiff avers that said servant, Brown, was unfit by his temperament and habits for his position of janitor on said premises, and that said defendants and each of them knew or could have known this fact by the exercise of ordinary care. . . Said defendants and each of them were negligent in failing to exercise ordinary care and diligence in employing and retaining

in their employ the said servant and employee, Brown, knowing that he was an unfit and improper person for such employment by reason of being habitually addicted to alcoholic liquors while on duty, and being while under such influence a dangerous character who was apt to use his shotgun which he always kept on the premises within the knowledge of said defendants; and that said servant had borne a bad record for a long time, during his said employment by said defendants and each of them, as herein described, having on one occasion committed an assault with an iron pipe, for which he was arrested, and aided in settling through the aid and assistance of said defendants; that as a direct and proximate result of said negligence of defendants and each of them, plaintiff has been injured and damaged as herein set out."

On the basis of these allegations the plaintiff prays for a judgment against the defendants for damages in the sum of $25,000. He further alleges that the Nolting Corporation, a corporation of the State of Virginia, is not financially able to respond to a substantial judgment, but is in the process of liquidating its assets through a liquidating committee of Virginia, and that in normal course liquidation will be completed within a few months. Unless a court of equity intervenes, this company will have transferred all of its assets from the State of Georgia even before the plaintiff can obtain a trial. On the basis of these and similar allegations, the petition prays for an injunction to restrain the Nolting Company, D. L. Stokes & Co. Inc., and D. L. Stokes from selling or transferring any of the assets, including the real estate, of the Nolting Company in Fulton County.

■ According to the allegations, the plaintiff was maliciously shot and injured by the janitor of an apartment-house while he was present in the house as the guest of a tenant. In the first count of the petition the plaintiff seeks to hold all of the six defendants liable under the doctrine of respondeat superior, contending that the act of the janitor was committed within the scope of his employment as the servant of each and all of them. A casual reading of the petition will disclose that the trouble was in no way connected with the janitor's employment, but arose entirely from an idle conversation between the janitor and the plaintiff's host, during the course of which the janitor became enraged and fired the shot which injured the plaintiff. In *Savan-*

*nah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470 (65 S. E. 322), it was held: "If a servant steps aside from his master's business, for however short a time, to do an act entirely disconnected from it, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not liable." This principle has been restated in numerous decisions by the Court of Appeals (*Gomez* v. *Great Atlantic & Pacific Tea Co.,* 48 *Ga. App.* 398, 400, 172 S. E. 750, and cit.), and was quoted with approval by this court in *Greeson* v. *Bailey,* 167 *Ga.* 638 (146 S. E. 490). There can be no question of its soundness, and it is clearly applicable to the facts stated in the first count. Accordingly, the first count of the petition did not state a cause of action against any of the defendants.

■ As construed by the plaintiff, the second count is based upon the theory that the janitor was, within the knowledge of the defendants a man of dangerous character, likely to do injury to others without cause, and that the defendants were negligent both in employing and in retaining him with knowledge of this fact. It appears that the apartment-house was the property of the estate of W. L. Randall, deceased, subject to a security deed in favor of Nolting First Mortgage Corporation, and that at the time of the injury this company had "immediate supervision and management" of it, under a contract made with W. L. Randall during his lifetime, and ratified by his executors after his death. In the management of this apartment-house the Nolting Company was at the time of the injury acting through local agents designated by the plaintiff as "D. L. Stokes and/or D. L. Stokes & Company Inc." This and similar phrases were repeatedly used by the plaintiff in referring to these agents. By reason of the control exercised by the Nolting Company through such agent or agents, the plaintiff is claiming liability against the Nolting Company, D. L. Stokes, and D. L. Stokes & Company Inc. We will now consider the second count so far as it applies to these three defendants, deferring to a later division the questions arising under this count as related to the defendants Fulton National Bank, P. H. Randall, and Mrs. Bessie Brown Randall, executors of the estate of W. L. Randall, deceased, but sued as individuals.

Counsel for the defendants criticize the expression "and/or" as contained in the petition. As an allegation in pleading this ex-

pression has met with unfavorable comment in a number of decisions. As an allegation in pleading it is an equivocal connective, being neither positively conjunctive nor positively disjunctive. Standing alone and construed most strongly against the pleader, it might perhaps be treated as disjunctive only. Seemingly, it should in most cases be subject to special demurrer and in some instances it might render the whole pleading subject to general demurrer. For example, if in the present case there were no other allegations to show who acted as agent for the Nolting Company, the petition for that reason alone might be fatally alternative as to D. L. Stokes and D. L. Stokes & Company Inc., in that as between these two defendants it would fail to show which of them should be held responsible. *Doyal* v. *Russell,* 183 *Ga.* 518, 534 (189 S. E. 32); 49 C. J. 97, § 91; 21 R. C. L. 451, § 15. Without admonition from any court, the rule that a petition shall "plainly, fully, and distinctly" set forth the plaintiff's charge or ground of complaint (Code, § 81-101) ought forever to restrain attorneys from using such loose and indefinite language in a pleading. But the present petition goes further and alleges that "the said defendants, D. L. Stokes and D. L. Stokes & Company Inc., did assume direction and management of said premises . . for and in behalf of said Nolting Company, . . either or both of said named parties being the duly authorized agent of said Nolting Company;" "that said defendants and each of them had and did exercise the right to specify the work and the manner of performance thereof" by the said servant and employee "as well as paying his wages;" that such employee was "in defendants' employ as janitor;" and that "said defendants and each of them did carelessly, negligently, and wrongfully retain in their employ the said servant Brown." In view of these and other similar allegations, we think a proper construction of the petition *on general demurrer* is, that both D. L. Stokes and D. L. Stokes & Company Inc. were agents of the Nolting Company with the power to act jointly or severally in performing the duties entrusted to them and that they did act jointly in reference thereto. Special demurrers were filed, but the court passed on the general demurrers only; and we are inclined to the view that the petition was not fatally defective as to any defendant merely because of the objectionable connective to which reference has been made. For

comments regarding such expression, see Employers Mutual Liability Ins. Co. *v.* Tollefsen, 219 Wis. 434 (263 N. W. 376); State *v.* Dudley, 159 La. 872 (106 So. 364); Bobrow *v.* U. S. Casualty Co., 231 App. Div. 91 (246 N. Y. Supp. 363); Cuthbert *v.* Cumming, 10 Exch. Rep. 809; 3 C. J. S. 1069.

The petition does not show the date of the agreement between W. L. Randall and the Nolting Company, under which this company assumed direction and management of the apartment-house. It appears that D. L. Stokes and the Stokes Company were placed in charge by the Nolting Company on August 22, 1935, and that the injury to the plaintiff occurred on October 12, 1935. The petition alleged in one place that the negro Pete Brown had been employed in his capacity as janitor "in said premises for more than one year" before he made the assault upon the plaintiff. In view of these facts, it is contended by the defendants that the petition does not show that this janitor was originally employed by any of them, and should be construed as charging nothing more than a retention of this servant after knowledge of his unfitness. Assuming that the petition should be so construed, we think it clearly apparent from all the allegations that each of these three defendants had authority either to retain or discharge this janitor, and that after entering upon the performance of their duties in the management of this apartment-house they elected to retain the services of such janitor, notwithstanding their knowledge of his dangerous character,—the Nolting Company being represented in this matter by D. L. Stokes and D. L. Stokes & Company Inc. Whether or not the petition might be construed as alleging actual knowledge, it states sufficient facts to show that these defendants either knew or should have known of the dangerous trait, and in this respect it is not objectionable as being an empty charge of constructive notice. *Babcock Brothers Lumber Co.* v. *Johnson*, 120 *Ga.* 1030 (6) (48 S. E. 438); *Fraser* v. *Smith & Kelly Co.*, 136 *Ga.* 18 (2) (70 S. E. 792); *Cedartown Cotton & Export Co.* v. *Miles*, 2 *Ga. App.* 79 (58 S. E. 289); *Southern States Portland Cement Co.* v. *Helms*, 2 *Ga. App.* 308 (58 S. E. 524); *Fulton Ice & Coal Co.* v. *Pece*, 29 *Ga. App.* 507 (116 S. E. 57). The inquiry then is whether or not, under the circumstances averred, a jury would be authorized to find that the conduct of these three defendants in failing to discharge or displace the man Brown as

janitor constituted negligence by them or any of them with respect to this plaintiff. In answering this question, it is well to consider first whether a proprietor acting for himself could be found negligent under the same circumstances. "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Code, § 105-401. The plaintiff while present in this apartment-house as the guest of a tenant was an invitee within the purview of this principle. *Crossgrove* v. *Atlantic Coast Line Railroad Co.*, 30 *Ga. App.* 462 (118 S. E. 694). "When the law requires one to do an act for the benefit of another, or to forbear the doing of that which may injure another, though no action be given in express terms, upon the accrual of damage the injured party may recover." Code, § 105-103.

The question is not whether the servant was acting within the scope of his authority, but whether in view of his known characteristics such an injury by him was reasonably to be apprehended or anticipated by the proprietor. *Palmer* v. *Keene Forestry Asso.*, 80 N. H. 68 (112 Atl. 798, 13 A. L. R. 995). "The presence of a mischievous human being on premises may constitute the danger against which the law requires of the occupant reasonable care to protect his invitee." *Swinarton* v. *Le Boutillier*, 7 Misc. 639 (28 N. Y. Supp. 53), affirmed, 148 N. Y. 752 (43 N. E. 990), quoted with approval in *Keyser Canning Co.* v. *Klots Throwing Co.*, 94 W. Va. 346 (118 S. E. 521, 31 A. L. R. 283, 293). The same principle was applied in the New York case of *Hall* v. *Smathers*, 240 N. Y. 486 (148 N. E. 654), in which a tenant of an apartment-house was assaulted by a servant, the house superintendent, not within the scope of his duties. The owner was held liable on the ground of negligence, because he had knowledge that the servant was incompetent and unfit, complaints having been made of the servant's vicious character before the assault upon the plaintiff. The court said: "The evidence as presented on this record tends to show an unjustifiable and unprovoked assault upon a tenant of an apartment-house by a superintendent kept in his position in spite of the complaints of the tenants, and with full knowledge of the defendants' agents of his habits and

disposition. This makes out a cause of action, and the complaint should not have been dismissed." In Southern Ry. Co. v. Hooper, 16 Tenn. App. 112 (65 S. W. (2d) 847, 850), it was said: "Every man owes to his neighbor a duty to act toward him with due care, and the act of the agent in law is the act of the principal. If a principal employs an agent to act with or against third parties, and knowing the agent from reputation and from actual act to be a man who is not accustomed to act with due care, then we think the principal has violated a duty due to third persons." See also, in this connection, Triplett v. Western Public Service Co., 128 Neb. 835 (260 N. W. 387); Priest v. F. W. Woolworth Five & Ten Cent Store, 228 Mo. App. 23 (62 S. W. (2d) 926); Crowell v. Duncan, 145 Va. 489 (134 S. E. 576); Hamilton Brothers Co. v. Weeks, 155 Miss. 754 (124 So. 798). In Renfroe v. Fouché, 26 Ga. App. 340 (3) (106 S. E. 303), it was held: "Where a servant departs from the prosecution of his business and commits a tort while acting without the scope of his authority, the person employing him may still be liable if he failed to exercise due care in the selection of his servant." The same principle would be applicable if the employer *retains* the servant after knowledge that the servant is of such temper and disposition that he is likely to injure others who are rightfully on the premises. In the circumstances of this case, a jury might infer that an owner or proprietor should anticipate even casual conversations between the janitor and invitees. But, in order that a party may be liable as for negligence, "it is not necessary that he should have contemplated or even be able to anticipate the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient if, by exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." 21 Am. & Eng. Enc. Law (2d ed.), 487 (b), quoted and applied in *Milchell* v. *Schofield's Sons Co.,* 16 Ga. App. 686, 690 (85 S. E. 978). See also 45 C. J. 918, § 484; 22 R. C. L. 125, § 12.

From what has been said, an owner or proprietor charged directly with negligence in retaining an unfit servant under the circumstances alleged in the instant petition could be found liable to one in the plaintiff's situation. On principle, it would seem

clear that an agent after entering upon the duty and responsibility of acting for the owner in such a matter might in like manner be held liable to a third person injured by any breach of duty on his part. *Southern Railway Co.* v. *Grizzle,* 124 *Ga.* 735 (124 S. E. 244, 110 Am. St. R. 191). The petition alleges that the Nolting Company was in immediate charge and control of the apartment-house, including the servants and employees, and that in the discharge of this responsibility it acted through its agents, D. L. Stokes and D. L. Stokes & Company Inc. The petition does not show such exclusive and independent control by D. L. Stokes and the Stokes Company as to relieve the Nolting Company from responsibility for their negligence in performing the duties entrusted to them by the Nolting Company. Compare Code, § 105-501; *Sinclair Refining Co.* v. *Veal,* 51 *Ga. App.* 755 (181 S. E. 705). Nor, under the facts alleged, is the Nolting Company relieved from liability upon the theory that D. L. Stokes and the Stokes Company were subagents employed by the Nolting Company for the estate of W. L. Randall, deceased, as principal, and that the petition does not allege any negligence on the part of the Nolting Company in employing these subagents. It appears from the petition, fairly construed, that D. L. Stokes and the Stokes Company were in fact the agents of the Nolting Company, even if they were also agents for the estate of W. L. Randall, deceased. "If the agent employs a subagent on his own account to assist him in what he has undertaken, such a subagent is the agent of the agent, who is responsible for the manner in which the authority has been exercised by the subagent." 2 C. J. S. 1362, § 137. So, if D. L. Stokes and the Stokes Company were negligent as alleged in retaining this janitor, both they and the Nolting Company may be held liable therefor. The defendants, however, invoked the provision of the Code, § 4-409, to the effect that an agent is not responsible for the negligence of an under-servant employed by him in behalf of his principal. It is insisted that the janitor was "an under-servant" employed by these defendants in behalf of the Randall estate. Consistently with what has already been said, it seems that this janitor was in fact a servant of the Nolting Company, even if in a sense he might also be considered as a servant of the estate. In that case, D. L. Stokes and D. L. Stokes & Company Inc. might be held liable for negligently

retaining him, when they should have discharged him, and their principal, the Nolting Company, might be responsible with them for such negligence. But even to treat the janitor as a servant of the estate, this section of the Code does not relieve these defendants under the facts stated in the petition. There is a difference between responsibility for the negligence of an under-servant himself and the negligence of an agent in employing or retaining him, within the scope of the agent's authority. In *Morris* v. *Warlick*, 118 *Ga.* 421 (45 S. E. 407), it was held: "Where an agent has authority to employ a subagent to do the work of the principal, the agent is not liable for the negligence of the subagent in the performance of the work, if due care has been used in his selection." As indicated in that decision, the well-settled rule is that the agent is liable for the negligence of the subagent if due care has not been used in his selection; and the same principle should be applied to negligence in failing to displace a subagent or an under-servant where, as in the present case, the agent appears to have had a duty and responsibility as to such matter. See, in this connection, *Atlantic Coast Line Railroad Co.* v. *Knight*, 48 *Ga. App.* 53 (171 S. E. 919); Smith *v.* Rutledge, 332 Ill. 150 (163 N. E. 544, 61 A. L. R. 273); 2 C. J. 690, § 351; 2 C. J. S. 1362, § 137, supra. Nothing to the contrary was held in *Pan-American Petroleum Co.* v. *Williams*, 174 *Ga.* 875 (164 S. E. 759). Under the facts of that case, it did not appear that the agent had any authority to employ or discharge the under-servant or subagent. It was only by a dictum that the decision in *Morris* v. *Warlick*, supra, was questioned in that case. The second count of the petition stated a cause of action against the Nolting Company, D. L. Stokes, and D. L. Stokes & Company Inc. The court did not err in overruling the general demurrers filed by these defendants.

■ The petition, however, did not state a cause of action in either count as against the Fulton National Bank, P. H. Randall, and Mrs. Bessie Brown Randall, and the court properly *sustained* the general demurrer filed by these defendants. The contract under which the Nolting Company assumed "the immediate supervision and management" of the apartment-house was made by the testator. The Nolting Company was the grantee in a security deed covering this apartment-house. The indebtedness secured

by the deed was in arrears. The company as the holder of such security deed had the right to demand possession of the property for the purpose of controlling the same until the net amount from the rents and profits was sufficient to satisfy the debt. *Polhill* v. *Brown,* 84 *Ga.* 338 (10) (10 S. E. 921); *Gunter* v. *Smith,* 113 *Ga.* 18 (38 S. E. 374); *Marshall* v. *Pierce,* 136 *Ga.* 543 (71 S. E. 893). Accordingly, the agreement between the Nolting Company and Randall created a power coupled with an interest, and the agency was not terminated by the death of Randall. Code, § 4-214; *Anderson* v. *Goodwin,* 125 *Ga.* 663 (3) (54 S. E. 679). The agreement needed no ratification at the hands of the executors, as they could not have repudiated it. The agreement gave to Nolting Company the immediate direction and control of the apartment-house, including necessary employees. It does not appear that these defendants, the persons who were executors, had or undertook to exercise any authority in the selection or retention of servants. These matters were entrusted entirely to the Nolting Company and its agents; and even if the janitor could in any sense be treated as a servant of the estate, he was not subject to the orders or the control of these defendants. It follows that they can not be held liable for the wrong committed by him. Code, § 105-501; *Brown* v. *Smith & Kelly Co.,* 86 *Ga.* 274 (12 S. E. 411, 22 Am. St. R. 456); *Greenberg* v. *Yarbrough,* 26 *Ga. App.* 544, 546 (106 S. E. 624); *Sinclair Refining Co.* v. *Veal,* supra; *Bibb Manufacturing Co.* v. *Souther,* 52 *Ga. App.* 722 (184 S. E. 421); *Dobbs* v. *Noble,* 55 *Ga. App.* 201 (189 S. E. 694).

*Judgment affirmed on each bill of exceptions. All the Justices concur, except*

ATKINSON, Justice, who dissents from the rulings stated in the second division of the headnotes and the opinion, and from the judgment in case No. 11884.