## 26813. TRAVELERS INSURANCE CO. *et al. v.* CLARK.

DECIDED JUNE 11, 1938. REHEARING DENIED JUNE 29, 1938.

118

120

*Neely, Marshall & Greene,* for plaintiffs in error.

*Reuben A. Garland, Howell & Post,* contra.

SUTTON, J. "In order for an injury to be compensable under the terms of the workmen's compensation act, it must have been occasioned 'by accident arising out of and in the course of the employment,' Code, § 114-102. An accident arises in the course of the employment, within the meaning of the act, 'when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. . . An accident arises "out of" the employment when it arises because of it, as when the employment is a contributing, proximate cause. This and the conditions stated above must concur before the act can apply.'" *Employers Liabil-*

*ity Assurance Corporation* v. *Woodward,* 53 *Ga. App.* 778 (187 S. E. 142) ; *Liberty Mutual Insurance Co.* v. *Mangham,* 56 *Ga. App.* 498, 499 (193 S. E. 87). If the accident which resulted in the death of Clark arose out of and in the course of the employment with Cromer & Thornton Inc., it would necessarily follow that compensation was properly awarded in the present case. If, however, Clark was the special employee of Pinnell and Glasgow, and, as contended by the plaintiffs in error, free from any control by his general employer on the occasion in question, not acting in the furtherance of its business, the defendants are not liable. The director and full board found that in accompanying Pinnell and Glasgow Clark was acting under the command of the general employer and serving its interests. The superior court, on appeal, affirmed the finding and award. The defendant in error strongly insists that the evidence so authorized. While it is well established that in the absence of fraud the finding of fact by the Industrial Board will not be reversed by the appellate courts if there is any evidence to sustain such finding, and that the provisions of the workmen's compensation act will be liberally construed to effect its beneficent purpose, we think from a careful consideration of the record that Clark, at the time of the accident which resulted in his death, was engaged in a voluntary act which was entirely disconnected from the general employment with Cromer & Thornton Inc., and was under the sole control of Pinnell and Glasgow in an enterprise in which the defendant's agent merely consented that he be used. We now proceed to an examination of the law and the evidence.

In determining whether or not the relationship of master and servant prevails in a compensation case, the same principles that exist under the common law obtain. "The relation of master and servant exists whenever the employer retains the right to direct the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done." Singer Mfg. Co. *v.* Rahn, 132 U. S. 518 (10 Sup. Ct. 175, 33 L. ed. 440). It is not contended in the present case that there was a contract of hiring between Cromer & Thornton Inc. and Pinnell and Glasgow. Clark was borrowed. Cromer & Thornton Inc. was paid nothing. The agreement was that Pinnell and Glasgow should pay Clark. But the principles of law in a case of hiring may profitably be exam-

ined in determining the present issue. In *Brown* v. *Smith &
Kelly*, 86 *Ga.* 274, 277 (12 S. E. 411, 22 Am. St. R. 456), the
following was quoted from Wood on Master & Servant, § 317:
"The real test by which to determine whether a person is acting
as the servant of another is to ascertain whether at the time when
the injury was inflicted he was subject to such person's orders and
control, and was liable to be discharged by him for disobedience
of orders or misconduct." See also *Bibb Mfg. Co.* v. *Souther*, 52
*Ga. App.* 722 (184 S. E. 421). For a hirer or borrower to become
the master of the servant of the general employer under circum-
stances such as we now have under consideration, the headnote in
*Brown* v. *Smith & Kelly*, supra, makes it clear that he must have
"complete control and direction" of the servant for the occasion;
the general employer must have "no such control" or, in other
words, must relinquish control; the hirer or borrower must have
the "exclusive right to discharge" the servant and "put another
in his place or to put him about other work." A well-recognized
principle is stated in *Savannah Electric Co.* v. *Hodges*, 6 *Ga. App.*
470 (65 S. E. 322): "If a servant steps aside from his master's
business, for however short a time, to do an act entirely discon-
nected from it, and injury results to another from such inde-
pendent voluntary act, the servant may be liable, but the master
is not liable." As stated in 18 R. C. L. 784, § 244: "The fact that
an employee is the general servant of one employer does not, as
matter of law, prevent him from becoming the particular servant
of another, who may become liable for his acts. And it is true as
a general proposition that when one person lends his servant to
another for a particular employment, the servant, for anything
done in that particular employment, must be dealt with as the
servant of the man to whom he is lent, although he remains the
general servant of the person who lent him."

The above principles of law have been set forth as an aid in
determining whether or not, under the evidence, the Industrial
Board was authorized to find that the accident in the present case
was one which arose "out of and in the course of the employment"
with Cromer & Thornton Inc. No reported case exactly in point
has been cited by counsel for either party; and though many may
be examined, we are left at last to decide the question according
to the statute, guided by established principles and the particular

facts of the case. Volumes have been written in the opinions upon the quoted clause of the compensation act. "Lord Wrenbury observed of the workmen's compensation act of England that 'No recent act has provoked a larger amount of litigation than the workmen's compensation act. The few and seemingly simple words "arising out of and in the course of the employment" have been the fruitful (or fruitless) source of a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion. From their number counsel can, in most cases, cite whatever seems to be an authority for resolving in his favor, on whichever side he may be, the question in dispute.' Herbert *v.* Fox (1916), A. C. 405 (85 L. J. K. B. 441, 114 L. T. N. S. 426, 32 Times L. Rep. 261, 60 Sol. J. 237, 9 B. W. C. C. 164 Ann. Cas. 1916D, 578, 7 British Rul. Cas. 142). See 28 R. C. L. 799. He also said that it is best to go always back to the words of the statute, and, guided by certain broad principles which must be taken to be established, seek to apply this language to the particular case." *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682, 687 (118 S. E. 786).

Under the principles set forth above, and the evidence fairly and reasonably construed most favorably to the claimant, a finding was demanded that the accident in the present case did not arise out of and in the course of employment with Cromer & Thornton Inc. It is true that at one point in his testimony Hugh Cromer stated: "I told him to go with these two men and drive them to Florida, that they would pay him for the time, and I would pay him for a week," but that isolated portion of the testimony could not be construed as *commanding* Clark to accompany them. It is otherwise shown that he was personally solicitous of their welfare, and regarded Clark as the only available and suitable one to drive for them; but in no sense did he make it obligatory upon Clark to go. He testified that he *asked* Clark "if he wanted to go;" that he told him "it would be all right for him to go," and that Clark said he wanted to go to pick up that much money. At another time he testified that he told Pinnell and Glasgow that "they could have Clark," whereupon it was agreed by Glasgow that he would pay Clark $12. We are directed to the testimony of Hugh Cromer that at the time Clark left he was under the

command of Cromer. That is not, however, equivalent to testifying that he was exercising a power of command by in fact *commanding* that Clark go, or that on the pleasure trip Clark was to continue under his command. In fact, when asked to express himself in that respect, he answered that he thought the judge ought to decide Clark's status. He also testified that he did not know whether or not it would have been Clark's duty to abandon Pinnell and Glasgow if he had so requested, but that his relation with him was so close that, if he had requested it, Clark would have done anything he said. Undoubtedly that testimony indicates a marked fidelity to Cromer, a consideration that rightly or not might have induced Clark to breach the agreement with the travelers if his friend had desired his presence, but it is not incompatible with the fact of Clark having entered the enterprise with Pinnell and Glasgow as their exclusive servant. That Cromer was in fact relinquishing all control for the time being is evidenced by the fact that he did not know anything as to the destination, route, or purposes of the expedition. He testified that he was not interested in it. E. A. Pierce, credit manager, and Charles Cromer, president, testified that Hugh Cromer had no authority to send a driver to Florida on behalf of the corporation; and there is nothing in Hugh Cromer's testimony that suggests that authority. He merely had control of the drivers on the corporation's yard and the environs of Atlanta, deliveries being made by trucks in Fulton and DeKalb Counties, and car-load shipments being sometimes made from manufacturers to Cobb County.

While it is argued by counsel for the defendant in error that Clark was sent by Cromer as sales-promotion work, we think that such a theory is more fancied than real and too remote for evidential value. True, the corporation had sold Pinnell considerable material when he was doing some construction work in Atlanta, but there is no intimation that he had any intention of placing an order, seeking quotations, or discussing business in any respect. So far as the evidence shows, his visit was purely transitory and personal, and the service rendered by Cromer was likewise casual and personal. The expressed "hope" of Cromer, during his examination, of doing some business in the future with Pinnell could not amount to any reservation of authority over Clark on the trip in question. Nor do we think that the payment

of wages for Thursday afternoon and all of Friday was anything more than a mere gratuity, a grace often exhibited when a faithful employee absents himself from work. Payment of money may be corroborative of other facts indicating employment at a given time, but is not of itself conclusive. With Cromer knowing nothing of the whereabouts of the travelers, it would be a strained construction to say that he was exercising any control over Clark. Nor did he reserve the right of control. Pinnell and Glasgow had the "complete control and direction." It could not reasonably be said that they did not have the "exclusive right to discharge him" on the trip and "put another in his place." It is contended that after Clark left on Thursday his status remained unchanged through Monday when he was killed; and as if to support that theory it is urged by counsel that he was to be paid for a week by Cromer & Thornton Inc. But when we consider the evidence that he was paid by the week through each Friday, the only reasonable construction of the statement by Cromer that he told Clark that he would be paid for a week is that he was to be paid for the full week ending the Friday after his departure, and not for an additional week which would have included Monday when he was killed. Counsel for the defendant in error particularly directs our attention to *Liberty Mutual Insurance Co.* v. *Neal*, 55 *Ga. App.* 790 (191 S. E. 393), and contend that, as in that case the duties of the servant could be said to have been broadened, the duties of Clark were broadened in the present case. The *Neal* case is distinguishable. Not only was the servant on the pay-roll of the general employer at the time he was injured, but, under the orders of his superior, a vice-principal of the master, was engaged in cutting wood which the employer was interested in obtaining for sale to its employees through its commissary. Under the law and the evidence in the present case a finding was demanded that at the time of the accident, which resulted in the death of W. A. Clark, he was in the exclusive employ of Pinnell and Glasgow, free from any control or direction of Cromer & Thornton Inc. Consequently the superior court erred in affirming the award of the Industrial Board.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*