## HENDERSON *v.* NOLTING FIRST MORTGAGE CORPORATION *et al.*

No. 12423. SEPTEMBER 27, 1938.

*Evins, Quillian & Evins,* for plaintiff.

*Kennedy, Campbell & Therrell, J. A. Branch,* for defendants.

BELL, Justice. J. R. Henderson filed a suit to recover damages for personal injuries, and for equitable relief. There were six defendants, including Nolting First Mortgage Corporation, D.L. Stokes & Company Inc., and D. L. Stokes. The petition alleged that the plaintiff was maliciously shot and injured by the janitor of an apartment-house while the plaintiff was present in the house as guest of a tenant. The apartment-house was the property of the estate of W. L. Randall, deceased, subject to a security deed in favor of Nolting First Mortgage Corporation, which company, the petition alleged, was at the time of the injury in control of the house as agent of the owner, managing the house, with power to retain or discharge the janitor, through its agents, D. L. Stokes & Company and D. L. Stokes. It was in part by reason of these alleged relationships that these three defendants were named as such in the plaintiff's petition. The other three persons named as defendants were the executors of the estate of W. L. Randall, deceased. The petition was in two counts. The first count was based on the alleged relation of master and servant between the defendants and the person who assaulted the plaintiff. The second count was based on the theory that the janitor, within the knowledge of the defendants, was a man of vicious and dangerous character, having a propensity to assault and injure others without cause, and that the defendants were negligent in retaining him as such employee after knowledge of this trait. This is the second appearance of the case in this court. In *Henderson* v. *Nolting First Mortgage Corporation,* 184 *Ga.* 724 (193 S. E. 347), it was held that the first count did not state a cause of action against any of the six defendants. It was held that the second count was sufficient to state a cause of action against the Nolting

Company, the Stokes Company, and D. L. Stokes. Thereafter the case proceeded to trial before a jury against these three defendants. After the plaintiff had introduced evidence the court granted a nonsuit; and the plaintiff excepted.

It would serve no useful purpose to state the evidence in detail. We have considered every part of it most carefully, and have reached the conclusion that the court did not err in ordering the nonsuit. Regardless of other contentions, there was no evidence which would have authorized a finding that the three defendants named, or any of them, were ever in control of the apartment-house or its janitor as alleged in the petition. On the contrary, as to management and control, the evidence tended to show only that some time before the death of Randall, the owner, he had vested such authority in other persons whom he had employed as his own rental agents, and had instructed them to remit the *net rentals* to the Nolting Company through its local agents, the Stokes Company and D. L. Stokes. While it appears from the evidence that the rental agents of Randall would ask for permission from such local agents of the Nolting Company before incurring expense for repairs and improvements, this was not to show that the defendants had control of the apartment-house and the janitor, as alleged in the petition. The indebtedness held by the Nolting Company was in default, and only the net rentals were being applied upon the indebtedness. In these circumstances it was but natural to obtain permission from the creditor before deducting unusual expense, as the cost of repairs or improvements. The plaintiff introduced a letter from the Nolting Company to the firm which had been employed by Randall as his rental agents. This letter tended to show that this same firm had represented the Nolting Company in the management of properties owned by it in Atlanta. The company, however, did not own the apartment-house here in question. It merely held a security deed against it. The letter did not refer in terms to this apartment-house, nor did it refer to other properties except by the general description, "our properties." Moreover, the letter was conclusively explained by the testimony of an officer of the corporation, to the effect that it related only to properties *owned* by the company, and not to this apartment-house, the security deed to which was running on indulgence, but of which the company had not assumed control as

owner or otherwise. Compare *Frazier* v. *Georgia Railroad & Banking Co.*, 108 *Ga.* 807 (33 S. E. 996); *Evans* v. *Schofield's Sons Co.*, 120 *Ga.* 961 (48 S. E. 358); *Robertson* v. *Carroll Furniture Co.*, 54 *Ga. App.* 841 (189 S. E. 273).

It might be said, under the evidence, that the authority of Randall's rental agents was terminated by his death, which according to the record occurred before the plaintiff was injured. Who then, if any one, assumed control after Randall's death? It appears from the record that the rental agents appointed by him continued so to act until shortly before or at about the time the plaintiff was injured. It might also be inferred from the evidence that they discontinued such control on receipt of the letter from the mortgage company to which reference has just been made. However that may be, there was absolutely no evidence to show that the owner at any time had placed the mortgage company or any of its agents in charge of this apartment-house or that any such control or management was ever assumed by them. The evidence may tend to leave a hiatus as to who was in control following the discontinuance of Randall's agents; but even so, it supplies no basis for the contention that any one of these three defendants had either been given or had assumed control of this apartment-house and its janitor at the time of the injury. It follows that even if the character and reputation of the janitor was of the nature alleged in the petition, and if his disposition to violence was known to one or more of these three defendants, they were still not responsible, because they had no authority over him and had assumed none, for aught that is shown by the evidence. Under the evidence the jury could not lawfully have found a verdict in favor of the plaintiff, and the judge was right in ordering the nonsuit.

*Judgment affirmed. All the Justices concur.*