34782. FLEMING *et al. v.* E. I. DU PONT DE NEMOURS & CO., INC.

DECIDED MARCH 2, 1954—REHEARING DENIED MARCH 18, 1954.

*Dudley Cook,* for plaintiffs in error.

*Alston, Sibley, Miller, Spann & Shackelford, Daniel B. Hodgson,* contra.

NICHOLS, J. The question in reviewing a judgment of nonsuit is whether or not the plaintiff's evidence supports the material allegations of his petition, although, if the plaintiff goes further and introduces evidence that disproves his right to recover by establishing the existence of other undisputed defensive facts which show he is not entitled to a verdict, then a nonsuit is properly granted. *Rountree* v. *Seaboard Air-Line Ry. Co.,* 31 *Ga. App.* 231 (120 S. E. 654); *Clark* v. *Bandy,* 196 *Ga.* 546 (27 S. E. 2d 17). In this case, the defendant contends that the evidence shows conclusively that the defendant's agent, Davenport, became the employee of the county, so as to relieve the defendant of liability for Davenport's alleged negligence in advising the county engineer with respect to the quantities of explosive to be used and the method of detonation.

To show that the general employee or agent of one person has become the employee of another, with the effect of ending the general employer's responsibility for the acts of his agent, the new relation of the parties must clearly appear. The testimony of Davenport was that he was employed by the defendant, as their principal explosives representative in Georgia, to sell, handle, and demonstrate the use of explosives; that Patton, the county engineer, had asked Davenport to work with him and to advise him as to the loads of explosive to be used "and such as that"; that Davenport acted in an advisory capacity; that the holes were already dug when Davenport arrived; that Davenport told Patton how much Du Pont powder and dynamite to use, and Patton used the amounts designated by Davenport; that 13

charges of 500 pounds of explosive each were fired successively over a period of one-tenth of a second; that Davenport was standing over the holes as the dynamite went down to see that his instructions were carried out; and that he shot the charges himself.

The allegations of the amended petition were to the effect that Davenport was then acting for and on behalf of the defendant, Du Pont Company, as its agent and was acting within the scope of his employment; that Davenport advised and instructed Patton as to the amount of powder and dynamite to put in the holes, and the dynamite was discharged in the manner and quantities designated by Davenport; that Davenport was in charge of the dynamiting and was supervising the use of the Du Pont dynamite and powder, and had complete control and supervision over the amount of dynamite that was discharged on said occasion; that 6,500 pounds of dynamite were discharged in 13 holes about 60 feet deep, with 500 pounds to the hole; and that the entire 6,500 pounds of explosives were discharged within a tenth of a second.

These allegations are supported in nearly every respect by the evidence set out above. It is true that the evidence did not show that Davenport was in charge of the dynamiting, or that he had complete control and supervision over the amount of dynamite which was discharged. Yet the evidence that Davenport instructed the county engineer, who had called him in as an expert for advice, shows that Davenport had reason to foresee that his advice would be followed, as in fact it was. Davenport exercised supervision in fact, if not as a matter of right.

The evidence fails to show conclusively that Davenport was acting as an employee of the county alone. Although the actual performance of the blasting operation was not within the scope of his employment by the defendant, this was not the activity in which the petition charged the defendant with negligence. It is alleged that the defendant caused the dynamite to be discharged and exploded in the manner set forth, and that the defendant caused the dynamite to be exploded in that manner through Davenport's advice and instructions to the county engineer. According to Davenport's testimony, his duties as the defendant's field representative were to sell dynamite, to advise the

purchasers when they needed help, and to demonstrate the use of the explosives sold. The evidence shows that this was exactly what he was doing, and the petition complains of his negligence in the performance of these duties. Davenport was shown to have been acting in the scope of his employment by the defendant and in the prosecution of the defendant's business of selling explosives.

There is no evidence in the record showing that the county either had, or in fact assumed, the right to control Davenport in the performance of his duties, involving the exercise of his own judgment in an advisory capacity. The fact that the county engineer could follow Davenport's advice or not, as he saw fit, does not indicate that the county had an employer's right to discharge Davenport.

The opinion in the case of McLamb v. E. I. Du Pont de Nemours & Co., 79 Fed. 2d 966, cited by the defendant, answers a contention there advanced that the plaintiff, a government employee, became the special employee of the defendant's dynamiting consultants. But in that case it was conceded that there was no evidence of negligence on the part of the defendant's agents, and it was held that the plaintiff failed to show that he had become an employee of the defendant; rather, he remained the employee of his general employer, the United States. So, in the present case, it appears that Davenport was still the agent or employee of Du Pont Company when he advised and instructed the county engineer as to the amounts of explosives to be used and the manner of detonation. It is a fair inference that Du Pont Company gave to its customers the advisory services of its sales agent as a part of the sale of its products, so as to promote further sales. If the defendant by its agent gives instructions for the use of its explosive products, it is liable for its negligence in giving such instructions, in connection with the sale of its products. See Flint Explosive Co. v. Edwards, 84 Ga. App. 376, 393 (66 S. E. 2d 368) ; Atlantic Co. v. Taylor, 80 Ga. App. 25 (54 S. E. 2d 910).

There was evidence from which the jury could have found that the defendant, through its agent, Davenport, was negligent in instructing the county to use a large quantity of explosives, to be detonated over a very short period of time, as a result of

which a blast was performed in the county's quarry according to the instructions, causing the damage to the plaintiff's house as alleged. The court erred in refusing to vacate its judgment of nonsuit and reinstate the plaintiff's case.

*Judgment reversed. Felton, C. J., Gardner, P. J., Townsend and Carlisle, JJ., concur. Quillian, J., dissents.*

QUILLIAN, J., dissenting. I dissent from the ruling made in this case by the majority of the court. The evidence introduced disclosed the following facts: Fulton County maintained a rock quarry, which was located one mile from the plaintiff's home, and from which it obtained crushed stone for its roads. The county authorities decided to blast rock from the quarry, and for that purpose purchased dynamite from the defendant, Du Pont Company. Lee F. Davenport was at the time a general employee of Du Pont, and the county's chief engineer requested him to advise, instruct, and assist him in determining the amount of dynamite that was to be used and the manner in which it was to be exploded. Davenport complied with this request and rendered to the county the service requested by its engineer. The chief engineer, according to the evidence, remained at all times in full charge and control of the blasting operations. In the explosion a large amount of dynamite was used, considerable concussion resulted from the explosion, and it is fairly inferable from the facts proved that the concussion caused damage, the amount of which was shown by the evidence, to the Flemings' home.

It is the contention of the plaintiffs that the defendant is liable to them on account of the conduct of its general servant in advising and giving information and assistance to the county engineer in the blasting operations, which they contend resulted in the damage to their home. The plaintiffs contend that Davenport was the defendant's servant. In the ordinary course of things an employer is liable for the negligence of his servant who acts within the scope of his employment and in the prosecution of his master's business. While assisting the county's chief engineer in setting off the explosion which damaged the plaintiff's property, Davenport was not, on account of the fact that he was a general employee of the defendant, the employee of the defendant in relation to the work he was then doing or in relation

to the project he had then entered upon. The blasting operation was not within the course of Mr. Davenport's employment as a servant of the defendant, nor was it in the prosecution of the defendant's business. He did not, as to this particular work, occupy the relationship of a servant to the defendant.

It has been well established in this State for nearly three quarters of a century that where, as in this case, one lends his general servant to another, and relinquishes to the borrower the control and regulation of such servant's conduct, the borrower becomes master of such servant for the time and in relation to the purpose for which he is borrowed. *Brown* v. *Smith & Kelly*, 86 *Ga.* 274 (12 S. E. 411). In *Blakely* v. *United States Fidelity &c. Co.*, 67 *Ga. App.* 795, 797 (21 S. E. 2d 339), this court said: " 'The fact that an employee is the general servant of one employer does not, as matter of law, prevent him from becoming the particular servant of another, who may become liable for his acts. And it is true as a general proposition that when one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him.' 18 R. C. L. 784, § 244; *Bibb Mfg. Co.* v. *Souther*, 52 *Ga. App.* 722, 725 (184 S. E. 421); *Travelers Insurance Co.* v. *Clark*, 58 *Ga. App.* 115, 122 (197 S. E. 650); *Henderson* v. *Nolting First Mortgage Corp.*, 184 *Ga.* 724, 740 (193 S. E. 347)."

*Postell* v. *Brunswick & Western R. Co.,* 112 *Ga.* 602 (37 S. E. 869), cited by the plaintiff in error, is not in conflict with what is here held. In that case the master did not relinquish control of the servant and retained the right to discharge him. The defendant in the instant case did not have the slightest authority to direct the course of Davenport's conduct in the work he was doing for the county and the county's engineer could have dispensed with his services at any stage of the blasting operations. It is not shown by the evidence that the defendant did have any right to withdraw him from the task he was performing for the county.

A case coinciding in factual aspects with the instant one is McLamb *v.* E. I. Du Pont de Nemours & Co., 79 Fed. 2d 966. In the opinion in that case, which is well considered and written

with much clarity, it was said: "It is of course true that 'one may be in the general service of another, and nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation.' Standard Oil Company *v.* Anderson, 212 U. S. 215, 220, 29 S. Ct. 252, 253, 53 L. ed. 480. This is what the plaintiff claims took place in his case. However, this is but one aspect of the situation. The alternatives are presented in the following passage from the same authority, 212 U. S. 215, at page 221, 29 S. Ct. 252, 254, 53 L. ed. 480: 'It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.' "

For the foregoing reasons I do not think the trial court erred

in granting the nonsuit, and in denying the plaintiff's motion to reinstate the case, and I think that those rulings and judgments should be affirmed.