### 11334, 11335.    PHIPPS *et al. v.* GULF REFINING CO.; and *vice versa.*

Injury inflicted in the operation of a truck owned by one who used it in the business of selling and delivering goods furnished by another would not render the latter liable for damages, under the state of facts shown by the evidence in this case; and it was not error to direct a verdict for the defendant.

DECIDED JUNE 15, 1920.

Action for damages; from Whitfield superior court—Judge Tarver. January 6, 1920.

The Gulf Refining Company was sued for damages on account of the killing of the father of the plaintiffs by a truck owned by A. M. Hopkins and driven by his employee, which was being used by Hopkins in the business of selling and delivering oils and gasoline furnished by the company, and in collecting empty barrels and other containers to be returned to it; the plaintiffs alleging that the truck was in such a defective and dangerous condition that to drive it on a public road was gross negligence, the steering apparatus being so worn and broken that the driver could not control the movements of the truck; and that the company was operating it through Hopkins, who was alleged to be an employee of the company.

The question argued in the briefs in this court was whether the relation of Hopkins to the company, under a written contract between them and the other facts of the case, was such as to render the company liable for injury inflicted in the operation of his truck. On the part of the company it was contended that he was merely a consignee of its goods or an independent contractor, and not an employee or agent for whose operation of the truck the company could be held liable, and that the relation between them was governed entirely by the written contract. There was evidence that the company was a corporation of the State of Texas, and had at Dalton, Georgia, a plant, including a warehouse, where oils and other products sold by it were kept, and that Hopkins was in charge of the plant and of the business conducted there; that the company's name was painted on the truck, although it was his individual property, his purpose as stated by him being to let the public know that he was handling the company's products; that tax-returns of the company's property in the county were signed by him, and he was named as its agent in certain advertisements run by him and on one of the trucks used in delivering oil; and service of this suit was made on him as the company's agent. He testified that his relationship with the company and his powers to represent it were all stated in the contract referred to above, which was as follows:

"This memorandum of agreement made and entered into this second day of April, 1918, by and between the Gulf Refining Com-

pany, Atlanta, Ga., party of the first part, and A. M. Hopkins, of Dalton, Georgia, party of the second part, witnesseth: The party of the first part agrees to furnish a warehouse at Dalton, Georgia, suitable for the storage of oils. Party of the first part agrees to furnish a warehouse at Dalton, Georgia, suitable for the storage of oils. Party of the first part agrees to ship to party of the second part lubricating oils, illuminating oils, and gasoline, in carload lots, which shipments are to be received by the party of the second part and sold by him at prices named by party of the first part — all sales of such oils to be for cash; if on credit, only to such parties as are acceptable to party of the first part and upon terms authorized by them. When first party orders second party to sell on credit, second party shall deliver a signed receipt, or in case the oil is shipped out of the city of Dalton, Ga., second party will deliver an original bill of lading from the railroad company, which shall constitute a receipt. Party of the second part is to be responsible to the party of the first part for all goods shipped to him and is to account for all sales in accordance with above paragraph, sending three times weekly a statement showing all sales made and remitting three times weekly to party of the first part, at their Atlanta, Ga., office, all moneys received by him from sale of above-named goods. Second party shall render to party of the first part statement on the first day of each month, showing in detail the goods on hand. Second party agrees to pay all drayage and delivery charges, and collect all empty drums and barrels and ship same back to first party as ordered. It is strictly understood that all goods shipped party of the second part by party of the first part are the property of the first party until sold. Dalton, Ga., points to be made by wagon. Rocky Face, Tunnel Hill, Ringgold, Waring, Varnells, Cohutta, Red Clay, Spring Place, Tilton, Chatsworth, Eton, Resaca, Calhoun, Phelps, Carbondale, Hill City, Sugar Valley, Deep Springs, Beaverdale. On or about the first of each month, party of the first part will send to the party of the second part a statement showing the sales made by party of the second part during the preceding month, remitting party of the second part commission earned on such sales, said commission to be 2 cents per gallon on kerosene and gasoline when sold in milk cans or tank wagons, and 2 cents per gallon when sold in original package such as drums, barrels, cans or cases, and 10 per cent of

invoice on lubricating oils, where oil is delivered by party of the second part without payment of railroad freight charges. Where shipments are made by railroad, commission to party of the second part is to be 2 cents per gallon on kerosene and gasoline and 10 per cent. of the invoice on lubricating oils, and party of the first part is to allow party of the second part amount of freight paid on such shipments. Party of the first part reserves the privilege of making shipments from its stock of goods in hands of second party, and second party agrees to fill such orders as may be sent them by party of the first part — no commission to be allowed party of the second part on such shipments, but first party will pay second party 25 cents per barrel for drayage and clerical work in making such shipments. This contract may be terminated by either party upon ten days' written notice to the other party and upon such termination each party shall settle with the other in full any and all amounts which may be due by either party to the other." Signed by the parties.

There was evidence as to the defective condition of the truck, and as to the inability of the driver to control it, because of that condition, when it caused the death of the father of the plaintiffs by striking an automobile in which he was riding on a public road and which its driver was attempting to drive out of the way of the truck. The main bill of exceptions complains of the direction of a verdict for the defendant; and in the cross-bill of exceptions the defendant complains of the overruling of a demurrer to the petition.

*Maddox, McCamy & Shumate,* for plaintiffs, cited: 132 U. S. 518; 124 *Ga.* 735; 2 *Ga. App.* 565; 6 *Ga. App.* 147 (1); 9 *Ga. App.* 752.

*W. Carroll Latimer, Frank K. McCutchen, C. D. McCutchen,* for defendant, cited: 108 *Ga.* 397; 94 *Ga.* 463; 85 *Ga.* 38; 40 *Ga.* 363, 371-2; 18 *Ga. App.* 446 (2); Civil Code (1910), §§ 4414, 4415; 168 Ill. 514 (48 N. E. 163); 25 Ky. Law Reporter, 1758 (78 S. W. 862); 54 App. Div. (N. Y.) 252 (66 N. Y. Supp. 522); 132 U. S. 518 (distinguished).

BLOODWORTH, J. The court did not err in directing a verdict for the defendant.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. Broyles, C. J., and Luke, J., concur.*