24568. SINCLAIR REFINING COMPANY *v.* VEAL.

756

*Adams & Nelson,* for plaintiff in error.

*L. F. Watson, C. C. Crockett,* contra.

Stephens, J. B. L. Veal sued Sinclair Refining Company, alleging that the defendant had an agent, W. S. Jones, in the county, and was engaged in wholesaling and retailing gasoline and kerosene; that on January 28, 1933, the plaintiff sought to buy five gallons of kerosene from the defendant and from its tank truck carrying kerosene, in charge of E. A. McLendon; that McLendon was employed by the defendant to operate the truck and sell kerosene from it; that the plaintiff asked McLendon for kerosene, but McLendon drew from the tank and delivered to him five gallons of gasoline, that the plaintiff carried the supposed kerosene home with him and gave it to his wife to be used in a cook-stove; that on the next morning his wife put some of the supposed kerosene in the stove; and that the gasoline suddenly burst into flame which set fire to his house and thereby destroyed his household goods and wearing apparel. The defendant denied the material allegations of the petition, and specially denied that E. A. McLendon was its agent or employed by it to operate the truck.

It appeared from the evidence that the refining company made an agreement with W. S. Jones, the material parts of which are as follows: "This agreement made this 20th day of June, 1932, by and between Sinclair Refining Company, a Maine corporation, party of the first part, and Wilbur S. Jones, of Dublin, Ga., party of the second part; witnesseth, that, for the mutual considerations hereinafter named, the party of the first part (hereinafter referred to as the 'Company') employs the party of the second part (here-

inafter referred to as the 'Agent') to act as its agent in the territory described on the reverse side, with his headquarters at Dublin, State of Georgia, and the agent hereby accepts such employment subject to the terms set forth as follows: . . The agent shall at his own expense furnish necessary teams, trucks, motive power, drivers, labor, water, light, power, and heat, and shall also pay all necessary expenses in draying the company's products and equipment and in making sales, deliveries, and collections. The agent shall also at his own expense apply for in his own name, and have installed at his headquarters, a telephone which shall be listed in the proper telephone directory and other directories in the name of Sinclair Refining Company with the street address of agent's headquarters. All charges for local and long-distance calls made by means of such telephone, whether such calls be of a business or private nature, shall be for the account of the agent, and the company shall not in any case be obligated to pay any such charges or to reimburse the agent for any payments so made; provided, however, that the company may pay any such charges and deduct the amounts so paid from any commissions then due or thereafter to become due the agent. . . Agent shall be responsible for, and hereby assumes all responsibility for, any and all acts of agent's employees, whether they be of commission or omission, resulting in loss or damage to the company, and agent hereby agrees to indemnify, save harmless and reimburse company for and on account of any such acts of agent's employees." It appears from the uncontradicted evidence that Jones employed McLendon to drive the truck which belonged to Jones, that Jones himself paid McLendon's salary, gave orders and directions to McLendon what to do, had control of McLendon and his activities, had control and direction of the operation of the truck; that the name "W. S. Jones" was on the door of the truck, the word "Sinclair" on the side, and the words "Sinclair Opaline Motor Oil" on the back; that the sales reports were made by McLendon and furnished to Jones, who made the sales reports to the company; that the company had nothing to do with employing, supervising, or discharging McLendon or any other employee, and had nothing to do with Jones except as expressed in the contract; that Jones was required to employ men on the trucks that were decent; that if Jones employed a man who did not treat the public right, the company would consult him or

ask him to get another man; and that Jones was to carry out the rules and regulations of the company as expressed in the contract, one being that the truck was to be kept clean by Jones.

The jury returned a verdict in favor of the plaintiff for $250. The defendant moved for a new trial, and excepted to the overruling of this motion. The first three special grounds of the motion are: " (1) Because there is no substantial evidence to show that E. A. McLendon was the agent of the defendant company. (2) Because the strong and decided weight of the evidence completely negatives the contention that McLendon was the agent of the company. (3) Because the weight of the evidence shows that E. A. McLendon was the employee, servant, and agent of an independent third party, to wit W. S. Jones, who was operating a bulk-sales plant in the sale and distribution of the defendant company's products, independently, as his own business, and for his own use and benefit."

The question presented is whether the relationship of principal and agent existed between the defendant and McLendon, the truck-driver, or whether McLendon was an agent, not of the company, but only of the company's agent, Jones. It appears from the contract of employment of Jones by the company, and from the uncontradicted evidence, that, notwithstanding the company may have had rules and regulations binding on Jones respecting his supervision of his employees, Jones employed McLendon, paid his salary, had the right to discharge him and to direct the time, manner, means, and methods of his execution of the work, and had sole direction over him. Jones, therefore, and not the company, was the principal. A principal may consent to the employment by his agent, of a subagent to perform the duties of the agent for the principal, and the subagent in so doing may be only the representative of his immediate employer, and stand not in the relationship of agent to the principal of such employer. Professor Mechem in his work on Agency (2d ed.), 240 points this out in the following language: "The principal may, of course, authorize the employment of the subagent on his account and as his agent, and thus create privity of contract between them. But he may also do less. He may occupy a middle ground. He may clearly be willing to consent that his agent may perform the duty through a substitute employed at the agent's risk and expense, when he would not be willing, at

his own risk and expense, to have such a substitute employed. Thus a principal who has put goods for sale into the hands of an agent,— the agent having no power to delegate his authority, and it being perhaps a wrongful act on the part of the agent to entrust them to any one else, and a wrongful act on the part of the latter to exercise any control over them,—may be willing that his agent may employ a subagent so far that the entrusting of the goods by the agent to the subagent, or the exercise of control over them by the latter, or the latter's sale of them upon the terms prescribed to the agent, may all be acts done with the principal's consent, and yet not done by a person who stands in any contractual relation to the principal, or who can look to the principal for compensation, or for whose promises or conduct the principal would be responsible to third persons."

See *Phipps* v. *Gulf Refining Co.*, 25 *Ga. App.* 384 (103 S. E. 472); *Gulf Refining Co.* v. *Harris*, 30 *Ga. App.* 240 (117 S. E. 274). The judgment in the latter case was affirmed by operation of law in *Harris* v. *Gulf Refining Co.*, 157 *Ga.* 411 (121 S. E. 242). *Roberts* v. *United States Fidelity & Guaranty Co.*, 42 *Ga. App.* 668 (157 S. E. 537), is distinguishable in that it appeared there that the principal had the right to exercise control over the drivers of the trucks, and see that they performed their duties properly, to suggest that they be fired, and to require that they be selected from a certain class, and the principal actually retained and exercised the right to give instructions to the drivers. These circumstances were held sufficient to authorize an inference that the drivers when delivering the products of the principal were the agents of the principal. In *Joiner* v. *Sinclair Refining Co.*, 48 *Ga. App.* 365 (172 S. E. 754), it was held that the relation of master and servant existed between the refining company and its agent. No question as to the status of a subagent was involved. The decision of this court in *Gulf Refining Co.* v. *Harris*, supra, has been approved and followed by the Supreme Courts of South Carolina, North Carolina, and by the United States Circuit Court of Appeals for the 6th circuit. *Sams* v. *Arthur*, 135 S. C. 123 (133 S. E. 205); *Inman* v. *Refining Co.*, 194 N. C. 566 (140 S. E. 289); *Texas Co.* v. *Brice*, 26 Fed. (2d) 164. The opinion last cited contains a clear and comprehensive exposition of the principles involved in this case. The verdict for the plaintiff was not authorized, and the court

760

erred in not granting a new trial. The above is controlling, and therefore it is not necessary to pass upon other grounds of the motion for a new trial, which have no relation to the question of agency, on which the decision of the case must turn.

*Judgment reversed. Jenkins, P. J., and Sutlon, J., concur.*