26227.  INDEMNITY INSURANCE CO. *et al. v.* LAMB *et al.*

DECIDED SEPTEMBER 10, 1937.  REHEARING DENIED OCTOBER 7, 1937.

*Abrahams, Bouhan, Atkinson & Lawrence,* for plaintiff in error.
*Ulmer & Dowell, Hawthorne H. Richards,* contra.

FELTON, J.  In this case the claimants sought to prove that the deceased, Lamb, was the employee of the Gulf Refining Company, and not Horne, the distributor of its products, by various circumstances, to wit (1) it owned the distributing plant from which the deceased made deliveries; (2) the telephone of the distributor was in the name of the Gulf Refining Company; (3) the trucks in which deliveries were made had the name of the Gulf Refining Company on them; (4) the Gulf Refining Company fixed the price of the products sold; (5) the Gulf Refining Company extended the credit and billed the customers credited directly from the Atlanta office; (6) the Gulf Refining Company frequently had traveling representatives checking up Horne and dealers to whom Gulf products were sold, and these dealers were visited with or without Horne; (7) the Gulf Refining Company painted tanks of Horne's customers; (8) Gulf Refining Company products alone were sold; (9) Gulf Refining Company taxes were paid through Horne by the company; (10) Horne did not turn in for taxes any property used in distributing the products of the Gulf Refining Company.

Horne was operating under a written contract, the provisions of which are substantially as follows:  This agreement by and between the Gulf Refining Company, party of the first part, and O. W. Horne, party of the second part, witnesseth:  Party of the first part agrees to furnish a warehouse suitable for the storage

of oils. Party of the first part agrees to ship to party of the second part lubricating oils, etc., in car-load lots, which shipments are to be received by party of the second part, and sold by him at prices named by the party of the first part, all sales of such oils to be for cash; if on credit, only to such parties as are acceptable to party of the first part and upon terms authorized by it. Where first party orders second party to sell on credit, second party shall deliver receipt, or, in case the oil is shipped out of the City of Statesboro, second party will deliver an original bill of lading from the railroad company, which shall constitute a receipt. 2-1/2 cents per gallon will be allowed on tank-wagon deliveries to the following circuit points. . . Party of the second part is to be responsible to the party of the first part for all goods shipped to him, and is to account for all sales in accordance with above paragraph, sending three times weekly a statement showing all sales made, and remitting three times weekly to party of the first part all moneys received by him from sale of above-named goods. Second party shall render to party of the first part statement on the first day of each month, showing in detail the goods on hand. Second party agrees to pay all drayage and delivery charges, and collect all empty drums and barrels and ship same back to the first party as ordered. It is strictly understood that all goods shipped to party of the second part by party of the first part are the property of party of the first part until sold. On or about the first of each month, party of the first part will send to party of the second part a statement showing the sales made by party of the second part during the preceding month, remitting to party of the second part commission earned on such sales, said commission to be .. . Party of the first part reserves the privilege of making shipments from its stock in hands of party of the second part, and second party agrees to fill such orders as may be sent them by party of the first part. No commission is to be allowed second party for such shipments, but first party will pay second party . . This contract may be terminated by either party upon ten days written notice to the other party, and upon termination each party shall settle with the other in full, and any and all amounts which may be due by either to the other . .

This contract is presumed to contain all the agreements between the parties. Every single circumstance stated above is consistent

494

with Horne's relationship as an independent contractor; and the same is true of all of them combined. Therefore the circumstantial evidence is insufficient to make out a prima facie case. The widow of the deceased testified, in substance, that Horne begged her not to sue the Gulf Refining Company, because he had let the deceased do mechanical work on his truck and told her that he (Horne) would lose his job if the company found out about it. The most value this evidence would have would be as an impeachment of Horne's direct testimony to the effect that he was an independent contractor, and that the Gulf Refining Company did not have any right to, and did not, control the manner, time, or means of the work of his employees. This statement, if believed, could not be considered as an admission of the Gulf Refining Company until the relationship of principal and agent or employer and employee was established between the company and Horne; and that was the issue in the case. So, whether Horne's evidence was believed or not, the evidence demanded a finding against the claimant. If it was believed, it had to be accepted in preference to the circumstances not inconsistent with its truthfulness. If it was not accepted, it left the claimant's case to be supported by circumstantial evidence which was obviously consistent with the theory that Horne was an independent contractor. See *Federal Reserve Bank* v. *Haynie, 46 Ga. App.* 522 (168 S. E. 112). Under the rulings in *Phipps* v. *Gulf Refining Co., 25 Ga. App.* 384 (103 S. E. 472); *Gulf Refining Co.* v. *Harris, 30 Ga. App.* 240 (117 S. E. 274); and *Sinclair Refining Co.* v. *Veal, 51 Ga. App.* 755 (181 S. E. 705), the award in favor of the claimants was error, and the judge of the superior court erred in affirming the same.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*