**HELMS v. SINCLAIR REFINING CO.**

**No. 12210.**

United States Court of Appeals
Fifth Circuit.

Nov. 6, 1948.

Rehearing Denied Dec. 7, 1948.

HUTCHESON, Circuit Judge, dissenting.

Walter H. Burt, of Albany, Ga., for appellant.

DeLacey Allen, of Albany, Ga., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellant, Helms, the driver of a truck belonging to Great Southern Trucking Company, a common carrier of freight by motor vehicle, sued Appellee for personal injuries received when a skid used in attempting to load a 1200-pound tank on the truck broke and caused the tank to fall upon him. The skids and tank belonged to Appellee. The Trucking Company, at the request of R. S. Yarbrough, an agent for the distribution of Sinclair products under a written contract, sent Helms, its driver, and two helpers, with its truck to the Sinclair bulk station in Albany, Georgia, for the purpose of receiving the tank and hauling it to Colquitt, Georgia. When the truck, driver, and helpers arrived at the prem-

ises of the Refining Company where the tank was to be loaded, two employees of Yarbrough—Cleveland Hicks and Fred Roundtree—were there to assist in loading the tank. To that end Hicks and Roundtree procured—from somewhere on the premises—two scantlings each having the dimensions of two inches in thickness, six inches in width, and ten or twelve feet in length, which they placed at the rear of the truck, with one end of each scantling resting on the ground and the other on the truck body. When an attempt was made to roll the 1200-pound cylindrical tank up these skids, and on the truck, one broke, the tank fell, and Helms, who was standing near the loading operation, was injured.

The complaint alleged that defendant was guilty of negligence proximately causing the injury to plaintiff in: (1) failing to furnish skids of proper strength and character for the use intended; (2) failing to warn the plaintiff of the weight of the tank or the condition or strength of the skids; and (3) failing to furnish safe and suitable instrumentalities for loading the tank.

The defendant, after making certain denials, alleged that it was the duty of the Trucking Company to load the truck; that the loading was under the supervision of the plaintiff as the agent of the Trucking Company; that neither it nor any of its employees, agents, or servants had been negligent; and that it had breached no duty to the plaintiff. Despite its apparent obscuration in artfully chosen legalistic phrases, its chief defense was that the Trucking Company was employed by, and the work was being done for, Yarbrough, an independent contractor and not by the Refining Company, and that Hicks and Roundtree, the men who produced the skids and aided in loading the tank, were servants and employees of the independent contractor, acting for him and under his sole supervision and control. At the conclusion of all of the evidence, the lower Court directed a verdict for the defendant.

The record contains no statement by the lower Court as to the grounds upon which the motion was sustained. Appellee insists here that four of the grounds of its motion for directed verdict are well taken.[1] Since only four grounds are urged upon us, we will assume that these four grounds were all successfully urged upon the lower court. Since, however, the four grounds really present but a single question, viz., whether or not Cleveland Hicks and Fred Roundtree, in the loading of the tank, were acting for Yarbrough, while the latter was acting as an independent contractor, or whether or not they were acting for Yarbrough at a time when he was acting outside the scope of his independent contract and merely as an agent of Sinclair Refining Company, we shall assume that the motion was sustained solely on the ground that Yarbrough was acting under his contract as an independent contractor, and not on questions as to negligence, assumption of risk, proximate cause, and the like.

The following facts appear to be undisputed: (1) that Yarbrough was the distributor, in a specific area, of oil, lubricants, and other kindred products of the Sinclair Refining Company; (2) that Cleve-

[1] "1. Because under the law and the evidence the plaintiff has failed to show that either the Sinclair Refining Company, the defendant, or any of its agents, servants or employees, contributed by negligence or otherwise to the injuries received by plaintiff, as alleged in plaintiff's petition in said case.

"4. Because there is no substantial evidence to show that Cleveland Hicks and Fred Roundtree, the negro helpers, who were the agents of R. S. Yarbrough, and who under the evidence assisted in the loading of this tank, were the agents of the defendant company.

"5. Because the strong and decided weight of the evidence completely nega-

tives the contention that Cleveland Hicks and Fred Roundtree were the agents of the defendant company.

"6. Because the weight of the evidence conclusively shows that Cleveland Hicks and Fred Roundtree were the employees, servants and agents of an independent third party, to-wit, R. S. Yarbrough, who was operating a bulk sales plant in the sale and distribution of the defendant company's products; and that the said R. S. Yarbrough was an independent contractor, and that the defendant was and is not chargeable with the negligence, if any, of the employees of the said R. S. Yarbrough, independent contractor."

land Hicks and Fred Roundtree were the regular employees of Yarbrough, who paid them and who had the right to direct, control hire, and fire them; (3) that the tank and the skids were the property of Sinclair Refining Company and were located on its premises; (4) that the tank was not one theretofore used by Yarbrough or any of his customers in the distribution or sale of Sinclair products and was not at that time intended to be so used within his territory or in furtherance of the business covered by his contract with the Refining Company; (5) that the tank was being shipped to Colquitt, Georgia—a point outside of Yarbrough's territory—, at the specific request of the Refining Company and not in the due course of selling and distributing gas and oils by Yarbrough; (6) that the charges of the Trucking Company for transporting the tank from Albany to Colquitt were paid by the Refining Company and not by Yarbrough; (7) that the Great Southern Trucking Company, a motor common carrier of freight in the State of Georgia, was subject to the rules of the Georgia Public Service Commission which provided that where an article of freight to be shipped by such a motor carrier weighs in excess of five hundred pounds, the loading or unloading shall be performed by the shipper or consignee, as the case may be, but where requested the carriers will undertake, in behalf of the shipper or consignee, to employ additional help with no charge being made for labor performed by the truck driver but a charge of $1.25 per hour or fraction thereof for each man furnished other than the truck driver. [Rule 21, Section 1.] There is testimony by Johnson, an agent of the Trucking Company, that when he told Yarbrough that he could send only two men, a driver and a helper, with the truck, Yarbrough replied, "We will get it loaded." From the rule and this testimony it is evident that the loading was an undertaking of either Sinclair or Yarbrough and not the Trucking Company.

In addition to the foregoing facts which can scarcely be disputed, the law is also well settled by the decisions of the courts of Georgia that the written contract between Yarbrough and the Sinclair Refining Company for the sale and distribution of its products constituted Yarbrough an independent contractor in all undertakings covered by that contract. See Sinclair Refining Co. v. Veal, 51 Ga.App. 755, 181 S.E. 705; Gulf Refining Co. v. Harris, 30 Ga.App. 240, 117 S.E. 274; and Phipps v. Gulf Refining Co., 25 Ga.App. 384, 103 S.E. 472. See also our case of American Oil Co. v. Fly, 5 Cir., 135 F.2d 491, 147 A.L.R. 824.

The focal point of our inquiry is not, therefore, whether Yarbrough was an independent contractor in the matter of the handling of Sinclair products within the territory covered by his contract, but whether or not in the loading of a tank that was never used, nor intended to be used, by Yarbrough or any of his agents, stations, or customers in the furtherance of the business covered by Yarbrough's contract, and in the absence of any express requirement of such contract for Yarbrough to make such loading and shipments, Yarbrough was acting as an independent contractor.

If in loading the tank he was performing a function within the coverage of his contract, his act would be that of an independent contractor, but if he was performing an act outside the contract in undertaking to load the tank, he then was merely an agent, performing for Sinclair a service wholly for the benefit of Sinclair, and if guilty of actionable negligence in and about such performance, Sinclair would ordinarily be liable therefor.

We are aware of the fact that generally the existence of the relation of independent contractor and employer excludes the relation between the parties of principal and agent or master and servant. Nevertheless, there is not necessarily such repugnance between them that both relationships could not exist at the same time in connection with different phases of the work. An employee might be an independent contractor as to certain work and a mere servant as to other work not embraced within the independent contract. 27 Am.Jur., Independent Contractors, § 20. See also numerous citations in 19 Am. & Eng.Ann.Cas., p. 7, under heading "Dual Character of Employee" in the annotations

292

following the case of Messmer v. Bell and Coggeshall Company. In the light of this principle it is necessary that we examine the contract and the evidence to determine whether or not Mr. Yarbrough was in and about the performance of his contract, and therefore, acting as an independent contractor in the loading of the tank. His contract with the Refining Company was dated seven days before the accident and it was his opinion that it was his duty under the contract to ship the tank.[2] This opinion was not based upon any established course of dealing or interpretation placed upon the contract by the parties, and his testimony is merely a legal conclusion. The written contract must speak for itself, and the only provisions therein that speak on anything akin to the subject are paragraphs 6[3] and 8.[4]

Obviously paragraph 6 of the contract has reference only to the return of barrels and drums from Yarbrough's customers to the Company and has no reference to tanks not in, or for, use by Yarbrough's customers, such as the one here in question. Nor do we think that the provision in Section 8 that the agent shall furnish at his own expense the necessary teams, trucks, motive power, drivers, labor, water, light, power, and heat, and pay all necessary expenses in draying the Company's products and equipment and in making sales, deliveries, and collections covers anything more than an obligation on the part of the agent to do these things in making sales, deliveries, and collections of the Company's products in carrying on the business of a selling agent under the contract. It must be remembered that Yarbrough's contract with the Company was entered into for the sale of oil, gasoline, and other products of the Company. It was not a hauling or shipping contract, and it was not a contract that required Yarbrough to load, haul, and deliver, at

---

[2] An extract from Mr. Yarbrough's deposition contained the following statement:

"I am in charge of their station out on the old Leesburg Road and the business in connection with that station, and was in charge and had full control and management of the station and the business of that station on October 7, 1946. The business of the Sinclair Refining Company is the distribution of gasoline and oil and furnishing tanks to locations and places for that purpose. That tank had come in out there with other tanks to be shipped out, not in my territory but in Sinclair Refining Company's territory. I have a certain designated territory.

"As to whether I was acting in the scope of my authority and my duties in handling the tank on the occasion when Mr. Helms received his injuries, well I can simply state that I was ordered to ship this tank by Sinclair Refining Company. Under the contract I hold it was my duty to ship that tank. I understand oak skids some eight by ten or twelve feet were used. Those were my skids. They came in as bracings in cars in shipments of oil. They were used for bracing to keep the oil from jostling around in the car. They were the property of the Sinclair Refining Company."

Yarbrough also testified (R. 48):

"I was acting for them as their agent and under the specific authority of letter or communication through some official channel."

[3] "6. The Agent shall obtain prompt return from customers of all shipping barrels (heavy steel drums) and furnish strict accounting thereof and, of all light iron barrels returned for credit by customers, reporting the number to be credited to each customer by name; and shall make such disposition of all containers as the Company may direct."

[4] "8. The Agent shall at Agent's own expense furnish necessary teams, trucks, motive power, drivers, labor, water, light, power, and heat, and shall also pay all necessary expenses in draying the Company's products and equipment and in making sales, deliveries and collections. The Agent shall also at Agent's own expense apply for in Agent's own name and have installed at Agent's headquarters a telephone which shall be listed in the proper telephone directory and other directories in the name of Sinclair Refining Company with the street address of Agent's headquarters. All charges for local and long distance calls made by means of such telephone, whether such calls be of a business or private nature, shall be for the account of the Agent, and the Company shall not in any case be obligated to pay any such charges or to reimburse the Agent for any payments so made. The Company may pay any such charges and deduct the amounts so paid from any commissions then due or thereafter to become due the Agent."

his own expense, tanks of unlimited quantity and size to be shipped to other parts of the country when such tanks were not, had never been, and never would be any part of the business or equipment of Yarbrough for which a commission would have been received.

If, under the contract in question, Yarbrough could have been required to load and ship, at his own labor and expense, one such tank to Colquitt, Georgia, by the same reason he could have been required to load a thousand of such tanks. The relation in which he acted is not determinable as a matter of degree.

■ We are clearly of the opinion that in loading the tank Yarbrough was not acting in compliance with any requirements of his contract but merely in the capacity of an agent or servant of the Company, and, if he was guilty of actionable negligence in the loading of the tank, the Company would be liable.

■ Having concluded that Yarbrough was acting as an agent or servant of the Refining Company and that he was acting for the Refining Company in loading the tank, it further follows that his employees, Hicks and Roundtree, were also the servants of the Refining Company under the direction and control of Yarbrough, while the latter was acting as an agent or servant on the Company. Qui facit per alium facit per se. By virtue of the right of Yarbrough, while acting as an agent or servant of the Refining Company, to direct and control Hicks and Roundtree, it follows that the Refining Company, through its agent, Yarbrough, thereby also had the right to direct and control them, and by reason thereof Roundtree and Hicks might well be deemed to be special or borrowed servants of the Refining Company, for the actionable negligence of whom the Company would be liable to third parties, provided, of course, such negligence were committed in and about the business of the master and in the course of their employment. See Bibb Manufacturing Co. v. Souther, 52 Ga.App. 722, 184 S.E. 421;

Graham v. Cleveland, 58 Ga.App. 810, 200 S.E. 184; Reaves v. Columbus Electric & Power Co., 32 Ga.App. 140, 122 S.E. 824; Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 116 A.L.R. 449; Malisfski v. Indemnity Insurance Company, 4 Cir., 135 F.2d 910.

We do not undertake to pass upon any of the other questions that inhere in this case for the reason that it appears that the lower Court directed a verdict solely on the theory that the loading of the tank was the act of an independent contractor, for which the Refining Company was not liable.

The judgment of the Court below is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

HUTCHESON, Circuit Judge, (dissenting).

If the matter were to be decided on the basis of the law generally,[1] I should concur in the opinion of the majority. Since, however, the law of Georgia is quite otherwise,[2] I am constrained to dissent. I cannot agree with the view of the majority that what was being done by Yarbrough's employees at the time of the injury was not being done pursuant to the written contract between him and Sinclair. But I do not regard this as at all material. The question presented in this case is not one of the construction of a written contract but of the application of Georgia law to the undisputed facts. These are: that in shipping the tank, pursuant to his arrangements with Sinclair, Yarbrough was acting not as its servant but as an independent contractor; that Hicks and Roundtree were and remained his employees; and that they did not, under the borrowed servant rule, become employees of Sinclair so as to make Sinclair liable.

I respectfully dissent.

Rehearing denied; HUTCHESON, Circuit Judge, dissenting.

---

[1] Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 116 A.L.R. 449, where the cases are collected.

[2] Sinclair Refining Co. v. Veal, 51 Ga.

App. 755, 181 S.E. 705; Gulf Refining Co. v. Harris, 30 Ga.App. 240, 117 S.E. 274; and Phipps v. Gulf Refining Co., 25 Ga. App. 384, 103 S.E. 472.