The court did not err in affirming and sustaining the award and judgment of the State Board of Workmen's compensation. There is sufficient evidence to support this judgment and award. This being true, this court is without authority to reverse the judgment and award.
 DECIDED OCTOBER 11, 1949. REHEARING DENIED NOVEMBER 8, 1949.
On March 13, 1948, the deceased was engaged by Kelley's Laundry and Dry Cleaning Company and Whitehill Laundry. While so employed, it was the duty of the deceased to pick up laundry or dry cleaning from customers, deliver the same to the laundry or dry cleaning company to be processed, and then return the laundry or dry cleaning to the customer. At the time of the injury incurred by the deceased, on March 13, 1948, which injury resulted in his death on March 22, 1948, he was in the act of delivering a suit of clothes which had been cleaned by, and which bore the tag of, Kelley's Laundry and Dry Cleaning Company, and a bundle of clothes which had been laundered by, and which bore the tag of, the Whitehill Laundry. Kelley's Laundry and Dry Cleaning Company, plaintiff in error here, defendant in the court below, we shall hereinafter refer to by name.
The AEtna Casualty and Surety Company is also a plaintiff in error in this court, and a defendant in the court below. We shall hereinafter refer to this company as the insurance carrier. Mrs. *Page 384 
Helen H. Daniel, widow of the deceased, appears here as a defendant in error, plaintiff in the court below. We shall refer to Mrs. Daniel by name, and Whitehill Laundry, the other defendant in error here, plaintiff in the court below, we shall refer to as the Whitehill Laundry.
The voluminous evidence, as developed by the hearing before the single director, resulted in an award in favor of the widow Daniel. The statement of the director in what he terms "findings of fact, conclusions of law, and the award" based thereon, reads as follows: "The primary question for determination in the instant case is whether or not C. H. Daniel was an independent contractor or a joint employee of the Whitehill Laundry and Kelley's Laundry and Dry Cleaning Company, on March 13, 1948, when he received injuries from an automobile driven by a third party while he (Daniel) was in the act of making deliveries of laundry and dry cleaning which had been cleaned by both of these defendants herein and from which C. H. Davis [Daniel] succumbed to the injuries sustained on March 22, 1948.
"Quite a voluminous record of evidence is contained, as well as a lot of documentary evidence. This deputy director who heard the entire case desires to point out several salient factors which came out in the evidence. The now deceased Daniel owned his own truck and the evidence shows that he had a route which he traversed and picked up both laundry and dry cleaning from customers on this prescribed route and brought the laundry to Whitehill Laundry in Atlanta, Georgia to be cleaned, as well as bringing the dry cleaning to Kelley's Laundry and Dry Cleaning Company in Atlanta to be cleaned. After this was done both these defendants, according to the testimony adduced, had one of their employees to insert on a ticket bearing the name of their respective places of business, the amount of money due for the respective laundry and dry cleaning for the individual customer and customers of Daniel. Mr. Daniel had to accept the figures and the amount charged by these defendants. As a matter of fact, Mr. Daniel settled with these defendants based upon the figures that were made at the direction of employees of these respective defendants. The evidence is very clear to the effect that Whitehill Laundry received 65 percent for the work done based upon their figures and charges of a retail price and *Page 385 
the evidence further shows conclusively that Kelley's Laundry and Dry Cleaning received 60 percent of the gross amount based upon the figures and charges of the retail price as made and inscribed on its own slips and these figures and charges being made by an employee of the Kelley's Laundry and Dry Cleaning Company and at the direction of the owner of these defendants herein, and under their control. In order for the master and servant doctrine to exist according to the statute, the employer must retain the right to direct or control the time and manner of the execution of the work. An independent contractor becomes an employee of the owner by interference of the owner with the method or means of doing the work. Certainly, in the instant case these defendants who were joint employers, of C. H. Daniel on March 13, 1948, exercised the right of prescribing the method and means of doing the work, in that they set the price of their laundry and dry cleaning which Daniel brought into their respective places of business and based upon these prices they received the aforementioned 65 percent and 60 percent based upon their own figures. These defendants certainly retained the control of Daniel as to the amount to be charged and collected as their retail prices. An employer is liable if he assumes control of work being done by an independent contractor as to create the relation of master and servant.
"An assumption of control does not necessarily create the relation of master and servant, but it is a degree of control that either may exercise.
"This hearing Deputy Director was particularly impressed by the fact that both of these defendants offered testimony to the effect that they received financial gain as a result of doing business with Daniel. It is quite true that these defendants classified Daniel both as an independent driver and as a wholesale customer. This hearing Deputy Director is unable to subscribe to these defendants' theory. Another coincidence from the evidence adduced is the fact that Daniel's route No. 5 appeared on the records of both of these defendants. When questioned by the undersigned neither of these defendants could satisfactorily explain why Daniel had the same route number; that of No. 5, with both of these defendants. Therefore, I have the right to believe and to assume that both of these defendants were of *Page 386 
one accord in both their opinion of and dealings with Daniel as to Daniel bringing them business on a prescribed rural route outside of metropolitan Atlanta; wherein both of the places of business are located.
"These defendants were not primarily interested in the customers of Daniel, but they were primarily interested in the increase of business and the building up of the route by Daniel as the evidence clearly shows.
"At the beginning of this hearing, it was brought out that it was contended that Daniel solicited hats to be cleaned from his customers on his route and carried them to the Emporium Dry Cleaning Company. This hearing Deputy Director lent an attentive ear to the testimony with the expectation that an official of the Emporium Dry Cleaning Company would offer testimony to substantiate their contentions. It is quite true that defendants did bring one Roy Robinson, who is now the general manager of the Emporium Dry Cleaning Company to offer testimony. Robinson testified that he was not the manager of this establishment on March 13, 1948, even though he is now. He further testified that this establishment was in business on March 13, 1948, and said that its manager was one Joe Hubie. I cannot understand why defendants did not offer the court the benefit of the testimony of Joe Hubie. Since defendants did not, I am constrained to discredit altogether any contention or assumption that Daniel had any business connections with the Emporium Dry Cleaning Company, at the time of his injury which produced his subsequent death. This is furthermore believable on the part of this hearing Deputy Director based upon the testimony of Mr. Kelley to the effect that he saw Emporium tickets on bundles of laundry in Daniel's truck, when it appeared upon the premises of Kelley's Laundry and Dry Cleaning Company. Then, in the next breath, Kelley testified that his connections with the Kelly's Laundry and Dry Cleaning Company was to handle the cash and he did not handle the receiving of the dry cleaning from Daniel's truck. An employee includes every person in the service of another under any contract of hire or apprenticeship, either written or implied. Another thing that impressed the undersigned was the testimony of Mr. Kelley wherein he said that after the death of Mr. Daniel *Page 387 
that he personally went up in the vicinity of Mr. Daniel's route and remained there for approximately two hours for the purpose of securing an individual to take over this route. Mr. Kelley did secure an individual to take over this route. That clearly shows again that Mr. Kelley did not desire to lose business and cease making the money that he had been making as a result of Daniel's efforts on this route in securing dry cleaning business for Kelley's Laundry and Dry Cleaning Co. Kelley further testified that one Mr. Turner was now an employee of his, and that his name appeared on the payroll. He stated that his contract with Mr. Turner was that Turner received 20 percent commission on all dry cleaning Turner brought to him from this prescribed route; it being the same route as traversed by Daniel during his lifetime. He further stated that he furnished Turner with a truck and paid all of the expenses such as gas, oil, and the upkeep of the same. He stated that the primary difference between his connection with Turner from that of his connection with Daniel on this same identical route was that Daniel received 40 percent commission on the gross and furnished his own truck including gas, oil, and upkeep, and that Turner drove the truck which was owned by Kelley and which Kelley bought the gas, oil, and kept up said truck. Kelley testified in answer to the question propounded by this hearing Deputy Director as follows: `Q. Do you control Turner now who is serving part of this route and who you say is on your payroll based upon a 20 percent commission primarily because of that or because he is driving your truck?' Answer: `Because he is driving my truck.' That within itself convinces this hearing Deputy Director that the relation of employer-employee existed between Kelley's Laundry and Dry Cleaning Company and Mr. Daniel on March 13, 1948
"Mr. Arthur Wiseburg, the owner of the Whitehill Laundry, testified that he authorized Daniel to go off of his route and pick up laundry from the Bussey Hospital in Austell, Georgia, and even guaranteed the Bussey Hospital, through Mr. Daniel, to give this hospital one-day service on flat work, and further stated that possibly this defendant couldn't get the uniforms for probably another day. That within itself is further convincing that Whitehill Laundry exercised and assumed control over the actings *Page 388 
and doings of Mr. Daniel in the procurement of additional business, which meant other and further financial gain to defendant, Whitehill Laundry. The evidence of Mr. Wiseberg showed that he had had workmen's compensation insurance until about two years prior to Mr. Daniel's accident. He further testified that in April, after this accident in March, that he took out workmen's compensation insurance on all of his employees. He further testified that he had a basket in his place of business with a number 5 marked on it, which corresponded to Mr. Daniel's route number, in which Daniel was instructed to place the laundry he brought in to be cleaned. There again this defendant exercised and assumed its control over Mr. Daniel. Still further, there appeared on the Chevrolet truck which Mr. Daniel was driving at the time of the untimely accident, `Whitehill Laundry' with telephone number Hem. 3000, this being the place of business and Atlanta telephone number of this defendant. The testimony was that this had been on this truck for quite some length of time. The same is true of the Dodge truck which Mr. Daniel had bought, some time prior to his death, from Kelley's Laundry and Dry Cleaning Company, and which showed Kelley's Laundry and Dry Cleaning Company. It is quite true that the inscription `C. H. Daniel, Opr.' appeared on the door panel of the Chevrolet truck. With these advertisements being on these trucks it is all the more convincing to this hearing Deputy Director that these two defendants were doing all they could to assist Daniel in the procurement of more laundry and dry cleaning to bring to and which Daniel did bring to their respective places of business, and which in turn meant more money to each of these defendants. Another thing that is predominate in the instant case is that both of these defendants made good any and all of the losses that came about as a result of any laundry and dry cleaning that Daniel brought to their respective places of business. That again is convincing that these defendants exercised, retained and assumed control over Mr. Daniel in this enterprise. Mr. Wiseberg further testified that if any customer or customers of Mr. Daniel made complaints about any of the charges Daniel made for dry cleaning or any other complaints that he (Wiseberg) would have investigated the facts and circumstances and would have instructed Mr. Daniel accordingly, *Page 389 
and had these complaints rectified. Still again, this defendant retained the right of control over the actings and doings of Mr. Daniel in this enterprise. Immediately after Mr. Daniel's death both these defendants had men out on Mr. Daniel's route, supervising control of the route.
"The evidence shows that Mr. Daniel had just delivered a package of laundry with Whitehill Laundry inscribed on the ticket to a customer on his route and had repaired to his truck which was standing off the highway, and that he had a bundle of laundry with Whitehill slip on it under his arm and had reached for a parcel of dry cleaning, when an automobile driven by a third party, who was in a drunken condition, hit Mr. Daniel and critically injured him. Mr. Daniel was rushed to the hospital in an unconscious condition and from which he never regained consciousness, and subsequently died from these injuries at Crawford Long Hospital in Atlanta, Georgia, on March 22, 1948, only after all adequate surgery and hospitalization was given him. The testimony shows that there was an enormous amount of money expended for operations and hospitalization, which far exceeds the statutory limit as prescribed by this act, and which had been paid by the widow claimant herein. Therefore, I find as a matter of fact that the relationship of employer-employee existed by and between Mr. Daniel, with the Whitehill Laundry and the Kelley's Laundry and Dry Cleaning Company, jointly, on March 13, 1948, and that the chief test had been applied in the determination of the relationship of master and servant, in that these defendants assume the right to control and did control the manner and method of executing the work done by Mr. Daniel in the procurement of business for them on a prescribed route and on a percentage basis of 65 percent, and 60 percent, respectively, net to Whitehill Laundry and Kelley's Laundry and Dry Cleaning Company, based upon figures made by these defendants employees, and their charges made of a retail price. I find as a matter of fact that C. H. Davis was an employee, jointly, of Whitehill Laundry and the Kelley's Laundry and Dry Cleaning Company, on March 13, 1948, the date which Mr. Daniel received injuries as a result of an accident which arose out of and in the course of his employment with these employers, which injuries were the proximate cause of *Page 390 
Mr. Daniel's subsequent death on March 22, 1948, in Crawford Long Hospital in Atlanta, Georgia.
"In Fitts v. Zurich General Accident and LiabilityInsurance Company Ltd., et al., 57 Ga. App. 301, that court said: `The Department of Industrial Relations was authorized to find from the evidence that the commission salesman was an employee rather than an independent contractor, in that such evidence authorized the finding that the employer retained, even if it did not use, the right to control the time, manner, and means of the employee's work.'
"Therefore, I further find as a matter of fact that under Section 114-419 of the Georgia Workmen's Compensation Act, that Whitehill Laundry and Kelley's Laundry and Dry Cleaning Company are jointly liable. Code § 114-419 reads: `Whenever any employee for whose injury or death compensation is payable under this Title shall at the time of the injury be in the joint service of two or more employers subject to this Title, such employers shall contribute to the payment of such compensation in proportion to their wage liability to such employee.'
"I further find that Mr. Daniel received an average of $35.00 per week or better in commissions from Whitehill Laundry; also, that Mr. Daniel received an average of $40.00 per week in commissions from Kelley's Laundry and Dry Cleaning Company, making a total of approximately $75.00 per week. Therefore, I further find that the average weekly wage as earned by Mr. Daniel from his employment with these employers jointly, was in excess of $40.00 per week.
"I further find as a matter of fact that Mrs. Helen Daniel was the due and legal wife of C. H. Daniel at the time of this untimely accident on March 13, 1948, as well as on March 22, 1948, when Mr. Daniel died; that they were inter-married in the holy bonds of wedlock in a due and legal ceremony performed at Payne Memorial Pastorial in Atlanta, Georgia, on January 25, 1947, and that she lived with him continuously from that time until his death on March 22, 1948. That she did not wilfully or voluntarily desert C. H. Daniel, and that she was wholly dependent upon him for the sustenance of life at the time of his death. I further find that there were no children as a result of the issue of this said marriage, and that Mrs. Helen Daniel, *Page 391 
widow claimant, was the sole dependent of C. H. Daniel at the time of his death on March 22, 1948.
"I find as a matter of fact that Mrs. Helen Daniel, widow claimant, has paid out more than $500.00 for medical and hospital expenses for her husband as a result of injuries sustained as aforesaid. Therefore, I find that Mrs. Helen Daniel shall be entitled to receive and collect compensation at the rate of $17.00 per week, this representing 85 percent of one-half of the gross amount of the wages as earned by Mr. Daniel and allowable under this act for a period not to exceed 300 weeks and shall commence as of March 22, 1948, and continue each week thereafter. This widow claimant shall receive this compensation from Whitehill Laundry, employer; it having no coverage; and Kelley's Laundry and Dry Cleaning Company, and/or AEtna Casualty and Surety Company. These two defendants shall assume the payment of compensation to this widow claimant in the sum of $17.00 per week at the rate of $8.50 per week each. This in accordance with Code § 114-419.
"Conclusions of law: Based upon the above and foregoing findings of fact, I conclude as a matter of law that C. H. Daniel was an employee of Whitehill Laundry and the Kelley's Laundry and Dry Cleaning Company, jointly, on March 13, 1948, and that on that date he received injuries as a result of an accident which arose out of and in the course of his employment with this employer, which was the proximate cause of Mr. Daniel's subsequent death on March 22, 1948.
"He concluded further that Mrs. Helen Daniel was the due and legal wife of C. H. Daniel at the time of his death, and that she was his sole total dependent and that she is and shall be entitled to compensation from these defendants jointly.
"I conclude further that these defendants shall be required to reimburse the widow claimant in the sum of $500.00 for medical expenses incident to her husband for injuries sustained herein as aforesaid.
"Award: Wherefore, based upon the above and foregoing findings of fact and conclusions of law, the Whitehill Laundry, employer, having no coverage, and Kelley's Laundry and Dry Cleaning Company, employer, and/or AEtna Casualty and Surety Company, its insurance carrier, are hereby ordered and directed *Page 392 
to pay compensation to Mrs. Helen Daniel at the rate of $17.00 per week; this representing 85 percent of one-half of the gross amount of wages earned by C. H. Daniel, and allowable under this act; for a period not to exceed 300 weeks. These payments shall commence as of March 22, 1948, and continue each week thereafter. The Whitehill Laundry shall pay $8.50 per week to this widow claimant and Kelley's Laundry and Dry Cleaning Company and/or AEtna Casualty and Surety Company, shall pay to this widow claimant the sum of $8.50 per week.
"It is further directed that Whitehill Laundry and Kelley's Laundry and Dry Cleaning Company, or its insurance carrier, shall pay to or reimburse this widow claimant, the sum of $500.00 for medical expenses incident to the injuries sustained by C. H. Daniel and as a result of said deceased's last illness, this being the gross amount allowable under the act. Said employers and/or their insurance carriers shall share alike in the payment of said medical expenses.
"And, in addition thereto, the sum of $100.00 as provided by the Code Section shall be paid either directly to the proper party or to the widow claimant for funeral expenses; this compensation, medical expenses, and funeral expenses shall be in full and final settlement of this claim.
"All accrued compensation shall be paid up to date as per the terms and mandates of this award.
"This the 17th day of November, 1948. . . Deputy Director."
Upon separate appeal, the full board approved the findings of the single director. The Superior Court of Cobb County affirmed the awards of the board, to which judgments the defendants filed bills of exceptions to this court.
It is the contention of the plaintiffs in error that there is an entire absence of competent evidence in this case to support the findings of the board that the deceased was an employee of Kelley's Laundry and Dry Cleaning Company; and they contend that the deceased was an independent contractor. In support of the contention that the deceased was an independent *Page 393 
contractor, counsel for the plaintiffs cite Graham v.Cleveland, 58 Ga. App. 810, 813 (200 S.E. 184), which points out that the mere fact that a person performs work beneficial to a third person does not render him the servant of such third person. In that case the owner of an automobile turned his car over to an attendant at a parking lot, for the car to be placed in the parking lot by such attendant. The case merely holds that the attendant could not, under the facts of that case, be both the servant of the owner of the automobile and the servant of the parking-lot owner, but also holds that, "It is true that a person may be the servant of two or more persons, and that a general servant of one may become, under certain circumstances, the special servant of another in the performance of a particular piece of work (Brown v. Smith Kelly, 86 Ga. 274,12 S.E. 411, 22 Am. St. R. 456; Greenberg and Bond Co. v. Yarbrough,26 Ga. App. 544, 106 S.E. 624; Standard Oil Company v.
Anderson, 212 U.S. 215, 29 Sup. Ct. 252)." Clearly, the facts of that case in no way contain essentials which would warrant reversal of the present case based upon the findings in Graham
v. Cleveland, supra. Neither is there any legal logic in applying the decision in Timmons v. Fulton Bag CottonMills, 45 Ga. App. 670 (166 S.E. 40), as a basis for reversing the case at bar. The facts in that case in no wise resemble the facts in the case at bar.
Counsel for the insurance carrier et al. argue at length that the route number was important. While it is used as a basis for the award of the State Board of Workmen's Compensation, it occurs to us that this is relatively unimportant, either to the plaintiffs or to the defendants. We say this without in any way attempting to refute the findings of the board, which we are affirming, but rather to avoid needless discussion.
In Indemnity Insurance Company v. Lamb, 56 Ga. App. 492
(193 S.E. 76), the status of an independent contractor was definitely established. It follows that the facts of the Lamb
case cannot control the present decision.
Circumstantial evidence cannot be the basis of establishing a fact which can be established or refuted by direct, uncontradicted, reasonable and unimpeached testimony. FederalReserve Bank of Atlanta v. Haynie, 46 Ga. App. 522
(168 S.E. 112). *Page 394 
This is a correct principle of law, but not applicable under the facts of the instant case. And that hearsay evidence as to the relationship between the parties, whether that of employee or that of independent contractor, is of no probative value and is inadmissible, is likewise a correct principle of law, as enunciated in Alexander v. Bremen, 53 Ga. App. 676
(187 S.E. 141), but has no application under the character of evidence as developed in the present case. There is sufficient direct evidence in the instant case upon which to base a decision. In our opinion the decision is not founded upon circumstantial or hearsay evidence. Therefore, Eastlick v. Southern Ry. Co.,116 Ga. 48 (42 S.E. 499), is not controlling here. The facts in Banks v. Ellijay Lumber Co., 59 Ga. App. 270
(200 S.E. 480), Phipps v. Gulf Refining Co., 25 Ga. App. 384
(103 S.E. 472), Sinclair Refining Co. v. Veal, 51 Ga. App. 755
(181 S.E. 705), Mauney v. Collins, 64 Ga. App. 330 (13 S.E.2d 97), and Maryland Casualty Company v. Radney, 37 Ga. App. 286
(139 S.E. 832) show that there was some fact or facts developed in each respective case, by the evidence, which warranted the conclusion reached in each case, that there was no master and servant relationship. But this is not true, under the record, in the case at bar.
This court held in U.S. Fidelity Guaranty Company v.Price, 38 Ga. App. 346 (144 S.E. 146), and this principle has been followed many times since that ruling, as follows: "There being some evidence to support the finding of the industrial commission that the claimant's deceased husband was an employee and not an independent contractor, this court will not reverse the judgment of the superior court upholding that finding on appeal. . . This was a question of fact which the full commission decided in favor of the claimant. There is some evidence to support their finding; their award was affirmed by the judge of the superior court; and where this is so, `under the law as laid down in U.S. Fidelity Guaranty Company v.Christian, 35 Ga. App. 326 (3) (133 S.E. 639), this court is without authority to reverse the judgment of the superior court affirming the finding of the industrial commission.'" Counsel for the carrier, et al. also cite the following cases in support of the contention that Daniel was an independent contractor and not an employee: Yearwood v. Peabody, 45 Ga. App. 451 (2) (164 S.E. *Page 395 
901); Zurich General Accident Ins. Co. v. Lee, 36 Ga. App. 248
(136 S.E. 173); Bentley v. Jones, 48 Ga. App. 587
(173 S.E. 737); Bibb Manufacturing Co. v. Martin,53 Ga. App. 137 (185 S.E. 137). The facts in those cases are different from the facts in the instant case, as will be readily discerned upon a reading of the cases.
We think that the claimant in the instant case proved the relationship of employer and employee, and therefore hold that the cases of Young v. Demos, 70 Ga. App. 577 (28 S.E.2d 891); Travelers Insurance Company v. Faulkner, 63 Ga. App. 438
(11 S.E.2d 367); McCormick v. Kitchens, 59 Ga. App. 376
(1 S.E.2d 57), do not control our judgment here, under this record. The facts in DeLuxe Laundry Dry Cleaners v.
Frady (Fla.), 40 So.2d, 779, while somewhat similar to the facts in the instant case, do not show enough similarity to influence us to reverse the instant case, in view of the fact that the DeLuxe Laundry case is a foreign decision, not binding on this court, even if the facts were more nearly the same as those in the instant case.
There is sufficient evidence to support the finding of fact and award of the State Board of Workmen's Compensation, which finding of fact and award were affirmed by the superior court. This being true, this court is without authority to reverse the judgment of the superior court affirming the finding of fact and award of the State Board of Workmen's Compensation.
The court did not err in affirming and sustaining the award and judgment of the State Board of Workmen's Compensation.
Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur. *Page 396